**LOWENSTEIN SANDLER PC**
BRUCE BUECHLER (BB 0324)
MICHAEL S. ETKIN (ME 0570)
65 Livingston Avenue
Roseland, NJ 07068
973-597-2500 phone
973-597-2400 fax

- and -

**STROOCK & STROOCK & LAVAN LLP**
LAWRENCE ROSENTHAL
BRIAN M. COGAN
KRISTOPHER HANSEN
180 Maiden Lane
New York, NY 10038
212-806-5400 phone
212-806-6006 fax
Attorneys for Fuji Photo Film Co., Ltd.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JAZZ PHOTO CORP., | : | Case No. 03-26565 (MS) |
| | : | |
| | : | Hearing Date: July 28, 2003 |
| Debtor. | : | |
| | : | Oral Argument Requested |

**APPLICATION IN SUPPORT OF MOTION SEEKING A DETERMINATION THAT JCB CONSULTANTS, INC. IS A PROFESSIONAL PERSON, THAT JCB <u>CONSULTANTS, INC. IS NOT DISINTERESTED AND FOR DISGORGEMENT</u>**

TO:   THE HONORABLE MORRIS STERN,
         UNITED BANKRUPTCY JUDGE
         FOR THE DISTRICT OF NEW JERSEY:

15856/2
07/03/2003 1412224.01

Fuji Photo Film Co., Ltd. ("Fuji"), by and through its undersigned counsel, submits this application in support of its motion for the entry of an Order determining that JCB Consultants, Inc. ("JCB") is a professional person within the meaning of 11 U.S.C. §327(a), that JCB is not disinterested, and compelling JCB to discourage any funds received from the Debtor since the petition date (the "Motion"), and respectfully represents as follows:

## BACKGROUND

1. On May 20, 2003 (the "Petition Date"), Jazz Photo Corp. (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code").

2. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3. An Official Committee of Unsecured Creditors has been formed by the Office of the United States Trustee.

4. Fuji is a creditor of the Debtor, having obtained a judgment against the Debtor in the amount of approximately $30,000,000 after a trial before a jury in the United States District Court for the District of New Jersey. The District Court's Opinion is reported at 249 F.Supp.2d 434 (D.N.J. 2003). The jury and the District Court found that the Debtor had misappropriated Fuji's technology by importing and selling single-use cameras that infringed Fuji's patents and found that some of the conduct was willful. Both District Court Judge Faith Hochberg and the Court of Appeals for the Federal Circuit denied the Debtor's motion for a stay pending appeal. Fuji contends that the Debtor has continued to infringe Fuji's patents since the August 21, 2001 cutoff date for the District Court action and the date of a controlling Federal Circuit decision affirming, at least as to the Debtor, an earlier U.S. International Trade Commission (the "ITC") finding of patent infringement. An enforcement proceeding is currently pending before the ITC against the Debtor, Jack Benun and Anthony Cossentino (the Debtor's current president) based upon Fuji's making a *prima facie* case that the Debtor has been violating the ITC's Cease and Desist Order against the Debtor since August 21, 2001.

-2-

## JURISDICTION

5. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

## RELIEF REQUESTED

6. Fuji hereby requests that the Court enter an Order determining that JCB is a professional person within the meaning of Bankruptcy Code §327(a), that JCB is not disinterested, and compelling JCB to immediately disgorge any monies paid to it by the Debtor since the Petition Date.

7. The president and principal shareholder of JCB is Jack Benun. *See*, Affidavit of Anthony Cossentino in Support of Debtor's Various First Day Motions dated May 20, 2003, at ¶ 9.

8. JCB performs services for the Debtor pursuant to an Amended and Restated Consulting Agreement dated February 6, 2001 (the "Consulting Agreement), a copy of which is annexed hereto as Exhibit A. While nominally a consultant, Mr. Benun in fact controls both the Debtor and its affiliate Jazz Hong Kong. See Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., et al., 249 F.Supp.2d 434, 458-59 (D.N.J. 2003). Further, the Debtor's trial counsel in the District Court litigation, who withdrew for non-payment of fees after post- trial motions, went so far as to represent to District Court Judge Hochberg that: "On information and belief, Jazz Photo and Jazz Hong Kong are completely under the control of Jack Benun who personally makes all major decisions regarding them." See Certification of John Crossman annexed hereto as Exhibit B, at ¶18.

9. The Affidavit of Mr. Cossentino describes the services that JCB, through Mr. Benun, will provide to the Debtor: "the development and procurement of products for marketing and distribution, obtaining institutional debt and equity financing, finding and recommending the acquisitions, and developing the Debtor's business generally, all at the request of the Debtor's senior executives." First Affidavit of Mr. Cossentino at ¶10. See also, Consulting Agreement at ¶1(a)(which identifies the services to be performed by JCB, through Mr. Benun, for the Debtor). For these services, JCB is paid

-3-

the princely sum of $15,000.00 per week, plus additional monies based on the Debtor's net sales. Cossentino Affidavit at ¶ 11.

10.     Based on the services to be performed by JCB, through Mr. Benun, for the Debtor's post-petition, it is respectfully submitted that JCB is a professional person within the meaning of §327(a) of the Bankruptcy Code. Bankruptcy Judge Raymond T. Lyons in In Re Napoleon, 233 B.R. 910 (Bankr. D. N.J. 1999), held as follows:

> In order to be considered a 'professional person' within the meaning of §327, it is not enough that a party be a professional by education or training. Instead he or she must also play an integral role in the administration of the bankruptcy case. The professional could assist the trustee [or debtor-in-possession] with important activities, such as obtaining post-petition financing, negotiating creditor claims or formulating a plan of reorganization. It is these types of activities that rise to the level to be considered a 'professional person' under §327(a).

11.     When examining the list of services to be provided by JCB, through Mr. Benun, JCB is acting as an investment banker/advisor. There is no question that the services to be provided by JCB clearly fit within the ambit of what "professional person" whose retention under Bankruptcy Code §327(a) is required. Courts have held that investment bankers, advisors and financial consultants are professionals whose retention under Bankruptcy Code §327(a) is required. See, e.g., In Re Bicoastal Corp., 149 B.R. 216, 218 (Bankr. M.D. Fla. 1993) ("[I]nvestment advisors, business and financial consultants, and asset managers are professionals whose employment by a debtor requires prior court approval."); In Re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 24 (Bankr. S.D.N.Y. 1991) ("There is no doubt that investment bankers/advisors are subject to the professional retention requirements of §327."). Thus, JCB is a "professional person" within the meaning of § 327(a) of the Bankruptcy Code for which prior court approval is required.

12.     To the extent that the Debtor seeks to retain JCB nunc pro tunc to the Petition Date, this should be denied. The Third Circuit has held that the retention of a professional nunc pro tunc is not permitted except in exceptional circumstances. See, F/S Air Lease II, Inc. v. Simon, 844 F.2d

-4-

99, 105 (3rd Cir.), cert. denied, 488 U.S. 852 (1988); Matter of Arkansas Co., Inc., 798 F.2d 645, 649-50 (3rd Cir. 1986). No such exceptional circumstances exist in this case.

13. Even if the Debtor were to seek to retain JCB as a professional pursuant to §327(a) of the Bankruptcy Code, it could not do so because JCB is not a "disinterested person." Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession, with the Bankruptcy Court's prior approval, may employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." Thus, in order for the Debtor to retain JCB, JCB must not hold or represent an interest adverse to the estate and be a disinterested person. See In re First Jersey Securities, Inc., 180 F.3d 504, 509 (3rd Cir. 1999).

14. Bankruptcy Code §101(14) defines a "disinterested person" as a person who is not an insider of the debtor and does not have an interest materially adverse, is not and was not within two years before the date of the filing a director, officer or employee of the debtor or of an investment banker, or have an interest materially adverse to the estate by reason of any direct or indirect relationship with the debtor or for any other reason. In this case, given the relationship between JCB, through Mr. Benun, with the equityholders, his wife and daughters, the fact that Mr. Benun is no longer an officer of the Debtor and that JCB was created to avoid certain prior problems Mr. Benun had (see the Cossentino Affidavit at ¶¶8-9), and Mr. Benun's control over the Debtor, JCB is clearly not disinterested.

15. Further, the use of JCB is a subterfuge for the Debtor to "subcontract" and retain Mr. Benun as a professional person. The Court in In Re United Companies Financial Corp., 241 B.R. 521 (Bankr. D.Del. 1999), held that:

> It is clear that the requirement in section 327(a) that Court approval be obtained before the debtor employs any professional (including any accountant or financial advisor) mandates a separate application for approval of [the subcontracting employee]. Parties will not avoid the requirements of section 327(a) by entering into such 'subcontracting' arrangements which [an accounting firm] originally contemplated with respect to the [subcontractor] personnel. Such a subcontracting arrangement, if approved, would eviscerate the protections of section

327(a) and allow a third party (rather than the debtor or the Court) to determine who should render professional services for the estate. Id. at 528 (footnote omitted).

16. JCB and Jack Benun are not disinterested and hold interests adverse to the estate. Further, there is no disclosure as to whether JCB or Benun are owed any money pre-petition from the Debtor. Mr. Benun has admitted that he owes that Debtors approximately $800,000. See, Transcript of deposition of Mr. Benun taken on June 24, 2003 at page 21; lines 21-22, a copy of which is annexed hereto as Exhibit C.

17. In light of the fact that JCB is a professional person whose retention is required under §327(a) of the Bankruptcy Code and that JCB is not disinterested, any funds paid by the Debtor to JCB since the Petition Date should be disgorged and immediately returned to the Debtor.

18. The Court should also be aware that JCB, though Mr. Benun, are in control of the Debtor post-petition, and directing the Debtor to engage in activities in an attempt to defraud, hinder and delay the efforts of Fuji to collect on its pre-petition judgment against Mr. Benun individually. At the deposition of Mr. Benun taken in a state court collection action on June 24, 2003, Mr. Benun admitted that JCB and himself, as a result of their control of the Debtor, have directed the Debtor not to make the $15,000 weekly payments to JCB; but rather have directed the Debtor issue money orders (apparently at the Debtor's additional expense) to pay various obligations of Mr. Benun directly in an attempt to prevent Fuji from collecting on its judgment against Mr. Benun, a non-debtor. See Transcript of June 24, 2003 deposition at pages 15-17, a copy of which is annexed hereto as Exhibit C. Mr. Benun testified that "I give them [the Debtor] a list of various companies that checks need to be made out to, they go to the bank and get money orders made out to these entities." Transcript at page 17; lines 8-11. Thus, post-petition, Mr. Benun is utilizing the Debtor's accounts under his control to direct funds to pay his personal obligations, as opposed to the Debtor making the payments to JCB and JCB making distributions to Mr. Benun which would be subject to the levy of Fuji as a result of its judgment. This clearly demonstrates that Mr. Benun is continuing post-petition to use the Debtor as his instrumentality to hinder, delay and defraud Fuji as a judgment creditor and clearly evidencing his dominion and control over the Debtor is complete and absolute. As stated by Judge Lyons in

-6-

Napoleon, the activities that JCB (through Mr. Benun) performs are exactly those that a professional person would perform where retention under Bankruptcy Code §327(a) is required. Accordingly, Fuji respectfully requests that the Court grant the Motion.

19. It is anticipated that the Debtor will argue that the Consulting Agreement is an executory contract within the ambit of § 365 of the Bankruptcy Code and until such time as the Debtor assumes or rejects it, the Debtor is permitted to honor the Consulting Agreement. This argument is meritless. If an executory contract is for the retention of a professional person required under §327(a) of the Bankruptcy Code, the specific provisions of §327 supercede those of §365.

20. In the Matter of Delta Petroleum (P.R.) Ltd., 164 B.R. 425 (Bankr. D.P.R. 1994), the court held that the specific provisions of §327 concerning the employment of professional persons supercede §365 pertaining to executory contracts. Id. at 427. Therefore, the court determined that the Chapter 11 debtor's marketing director was not entitled to payment for post-petition services on the grounds that they were performed pursuant to an executory contract which the debtor *de facto* assumed when the debtor's president asked the marketing director to continue to perform services post-petition. Id. See also, In re Channel 2 Associates, 88 B.R. 351, 352-53 (Bankr. D.N.M. 1988) ("[T]he court holds that §365 cannot be used to circumvent the requirements of §327. Even if the contract were executory, the Debtor seeks to pay a professional person. Compensation for professionals is governed by §330, and which requires §327 Court approval.").

21. Similarly, former Chief Judge William H. Gindin in Matter of Timberline Property Development, Inc., 115 B.R. 787 (Bankr. D.N.J. 1990), in denying the nunc pro tunc retention of a real estate broker, citing the decision in Channel 2 Associates, held that the debtor could not assume a listing agreement with the broker to circumvent the requirements of §327 of the Bankruptcy Code. Id. at 792. The Court noted that a real estate broker was a professional whose prior retention under §327 was required. Id. Accordingly, the Debtor cannot argue that it has the right to continue to pay JCB for services performed post-petition under §365 of the Bankruptcy Code.

**WHEREFORE**, Fuji respectfully requests that the Court enter an Order (i) determining that JCB is a professional person within the meaning of §327(a) of the Bankruptcy Code;

-7-

(ii) determine that JCB is not disinterested within the meaning of the Bankruptcy Code; (iii) direct and order JCB to disgorge and immediately return to the Debtor all funds it has received since the Petition Date; and (iv) grant Fuji such other and further relief as is just and equitable.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**
Co-counsel to Fuji Photo Film Co., Ltd.

By: /s/ *Bruce Buechler*
    Bruce Buechler

- and -

**STROOCK & STROOCK & LAVAN LLP**
LAWRENCE ROSENTHAL
BRIAN M. COGAN
KRISTOPHER HANSEN
Co-Counsel for Fuji Photo Film Co., Ltd.

Dated: July 3, 2003

-8-