1  vocational schools.  Correct?

2  A    Correct.

3  Q    And you act as a part-time investigator on occasion.
4  Correct?

5  A    Yes.

6  Q    And you were introduced to Mr. Goode by a friend of yours,
7  Mr. Quan.  Correct?

8  A    The person's last name is not Kwan.  It's Won.

9  Q    But you're not an employee of Deloitte and Touche in any
10 respect.  Correct?

11 A    That's correct.  I am not.

12 Q    And you've worked with Mr. Goode on a total of three
13 matters.  Correct?

14 A    No more than three matters.

15 Q    How many more?

16 A    I don't remember.

17 Q    Now you worked on the particular Fuji engagement for the
18 period June, 2003 through August 20, 2003.  Correct?

19 A    Until August 20th.

20 Q    And the scope of your engagement as directed by Mr. Goode
21 was to search public records and visit sites he told you to
22 visit?

23 A    No, he asked me to investigate to see if some companies
24 actually exist and the people associated with it and their
25 relationship and to see if there was -- if they were associated

**J&J COURT TRANSCRIBERS, INC.**

1  with an individual called Jack Benun.

2  Q    And your investigation involved visiting the sites
3  provided by Mr. Goode and doing research on the people provided
4  by Mr. Goode to see what their connection was to Mr. Benun.
5  Correct?

6  A    You can say that.

7  Q    And you reported all of your findings, whatever they were,
8  to Mr. Goode, who reported them on to Deloitte and Touche, New
9  York and counsel to Fuji.  Correct?

10 A    No, that -- it didn't happen that way.  The situation was
11 like this.  I was merely working for Mr. Goode, and I followed
12 his instructions.

13 Q    Did you report all of your findings and information to Mr.
14 Goode?

15 A    Yes, I did that.

16 Q    And there's no written agreement between you and Mr. Goode
17 or Deloitte and Touche concerning your services.  Correct?

18 A    Correct, there wasn't one.

19 Q    And you never issued to Mr. Goode or Deloitte and Touche
20 any invoices for payment for your services.  Correct?

21 A    Correct.

22 Q    As between you and Mr. Goode, you were more the hands on
23 investigator with respect to this engagement.  Correct?

24 A    I followed his instructions.

25 Q    And who performed more of the site visits, you or Mr.

1  Goode?

2  A    Needless to say, I was the one.

3  Q    Now isn't it true, Mr. Fong, that you were not satisfied
4  with the methodology used in conducting this investigation?

5  A    I was a little dissatisfied.

6  Q    You didn't think the investigation was ideal from your
7  standpoint.  Correct?

8  A    That was not something that I had any control over.  I was
9  just carrying out Mr. Goode's orders.

10 Q    I'm not asking whether you had control over it, but isn't
11 it true that you didn't believe the investigation that you
12 conducted was ideal?

13 A    Can you please repeat the question?  Can you please
14 explain -- to the interpreter.  Can you please explain better
15 the question to me?

16 Q    Well, isn't it true, Mr. Fong, that you did not believe
17 your investigation was thorough and complete?

18 A    That's not so.

19 Q    Well at the very least, Mr. Fong, you testified, did you
20 not, that your investigation was not ideal?

21 A    Well maybe you misinterpreted what I meant to say.

22 Q    Well let me see if I can direct the Court and the parties
23 to your deposition which is in evidence and particularly
24 starting at page 32, and I asked you at line ten, page 32, "Do
25 you believe your investigation was thorough and complete," and

Fong Po Law - Cross/Sirota 254

1  then, Mr. Fong, you wanted the opportunity to speak with Mr.
2  Rosenthal, who declined that invitation, and your answer at
3  line 21 was, "In my personal opinion, I don't feel that it was
4  that ideal."
5           Question, "Why?"
6           "Because the methodology was different."
7           Question, "How was it different?"
8           Your answer, "Because sometimes I would have ideas
9  about how to go about it and would bring it up with Mr. Goode,
10 but he had his own ideas, and I need to follow instructions."
11          Question, "What were the ideas that you had that Mr.
12 Goode did not accept?"
13          Answer, "I don't remember."
14          "What other things would you want to do to make the
15 investigation more complete and thorough?
16          Answer, "In which respect?"
17          Question, "Any respect."
18          Answer, "I would think that I needed more concrete
19 evidence."
20          Were you confused when you gave that testimony as
21 well at your deposition?
22 A    Well in this -- I agree with what you just said.  I did
23 answer that question that way.
24 Q    Now part of your investigative skills involved lying to
25 parties in order to gain access to facilities.  Correct?

J&J COURT TRANSCRIBERS, INC.

1  A     Yes.

2  Q     And isn't it also true, Mr. Chen (sic), that you hired an
3  assistant to help you in your investigation?

4  A     It was not a hiring, and he was not helping me to
5  investigate.

6  Q     Well you paid Mr. Chen who you testified was an assistant
7  of yours -- $10,000 Hong Kong.  Did you not?

8  A     I did pay Mr. Chen $10,000.  His role was merely to drive
9  me, to accompany me to places, because those places were very
10 far away.  And in addition, occasionally I would send him to
11 those companies to take a look to see if they existed.  He was
12 not doing the investigation.  Moreover, he did not know what it
13 was all about.

14 Q     On at least two occasions, Mr. Chen visited two sites that
15 you testified about -- the Pengji factory and Poly-Tech --
16 without you.  Correct?

17 A     Can you please repeat the --

18 Q     On at least two separate occasions is it not correct, Mr.
19 Fong, that Mr. Chen inspected the Pengji factory and the Poly-
20 Tech factory at your request and reported his findings to you?

21 A     He was not investigating those places.  He was just to go
22 there to take a look to see if those companies existed.

23 Q     And Mr. Chen went to those companies at your request
24 without you on at least two occasions.  Correct?

25 A     Yes.

Fong Po Law - Cross/Sirota                                              256

1   Q     And you reported Mr. Chen's findings that he gave to you
2   to Mr. Goode on those two occasions.  Correct?
3   A     I don't remember if I relay it to Mr. Goode, and that's
4   because Mr. Goode was not aware that someone was helping me to
5   do that.
6   Q     And that's because you never told Mr. Goode that you had
7   the assistance of Mr. Chen.  Correct?
8   A     That's correct.
9   Q     And at least on one occasion Mr. Chen visited the Poly-
10  Tech factory at your request without you.  Correct?
11  A     Yes.
12  Q     And Mr. Chen reported to you his findings after visiting
13  Poly-Tech which you reported to Mr. Goode.  Correct?
14  A     Yes, and yes, it was as if the information came from me.
15  I reported it to him.
16  Q     But the information that you reported to Mr. Goode didn't
17  come from you.  It came from Mr. Chen, and you never told Mr.
18  Goode where you go the information.  Correct?
19  A     Can you please -- can you please repeat the question?
20  Q     I was afraid you were going to say that.
21  A     Sorry.  I don't feel that you explained the question well
22  to the -- the witness to the interpreter.
23  Q     On the occasion that Mr. Chen inspected the Poly-Tech
24  facility without you, he reported his findings to you which you
25  transmitted to Mr. Goode without ever telling Mr. Goode that

1  these were findings of Mr. Chen and not you.
2          THE COURT:  Would you have him hold the answer for
3  the moment.  Hold the answer for the moment.  Yes, what's your
4  objection?
5          UNIDENTIFIED ATTORNEY:  That's a fairly complicated
6  question in English.  I'm not even sure if it's possible to
7  translate it accurately into Chinese, and I'm not sure whether
8  any answer we get is going to be meaningful.
9          THE COURT:  Let's find out.  He can answer.
10 A   Well, I treat it as -- I treated it as information that I
11 gathered which I then reported to Mr. Goode.
12 Q   On at least one occasion, Mr. Fong, Mr. Chen visited the
13 Pengji Jiarui factory on July 18th and told you that factory
14 was closed.  Did he not?
15 A   Yes.
16 Q   And subsequently when you visited the Pengji factory on
17 July 25th, 2003 you noticed and testified that it was open and
18 operating.  Correct?
19 A   Yes.
20 Q   Now other than transmitting your findings, if you will, to
21 Mr. Goode, you have issued no report as far as conclusions
22 you've reached in your investigation.  Correct?
23         THE INTERPRETER:  Can the interpreter have the
24 question repeated, please?
25         THE COURT:  If you could just put it in smaller

1  bites, it is getting late for this witness.

2  Q    Mr. Fong, you've issued no findings with respect to your
3  investigation.  Correct?

4  A    What do you -- in what respect you mean issuing findings?

5  Q    Other than transmitting hard facts to Mr. Goode, you've
6  issued no conclusions with respect to your factual findings.

7  A    When I had Mr. Chen go to those addresses, it as merely to
8  observe if those companies existed.  When Mr. Goode asked me
9  about them, I would tell him, because he had previously
10 instructed me that I was to investigate if the companies
11 existed.  That is to say that there were things that there was
12 no need for me to report to Mr. Goode on, unless he brought it
13 up, then I would tell him.

14 Q    Isn't it true, Mr. Fong, that you have no evidence of
15 fraud committed by Mr. Benun?

16 A    Absolutely not.

17 Q    And isn't it also true, Mr. Fong, that you have no
18 evidence that Mr. Benun has any ownership interest in Poly-Tech
19 -- either Poly-Tech?

20 A    You can say that -- you can say that there is no actual
21 evidence, however, there were indications that he might have
22 relationships with these companies.

23 Q    You have no evidence whatsoever that Mr. Benun's
24 relationships with these companies constitute fraud.  Do you?

25            MR. TEELE:  Objection, Your Honor.

1      THE COURT: Would you hold the answer? What's your
2 objection?
3      MR. TEELE: The question asks for a legal conclusion.
4 Fraud has many different meanings under many different
5 contexts.
6      THE COURT: I'll allow the question. Go ahead.
7 Evidence of fraud of Mr. Benun. Just ask him that.
8 A    No.
9 Q    Do you -- you don't have any proof, Mr. Fong, that Mr.
10 Benun has any ownership interest in Pengji Shenzhen. Do you?
11 A    Correct.
12 Q    You don't have any proof whatsoever that Mr. Benun has any
13 ownership interest in any of the entities you investigated.
14 Correct?
15 A    Can you please repeat that?
16 Q    Isn't it true, Mr. Fong, that you have no evidence that
17 Mr. Benun has an ownership interest in any of the entities you
18 investigated?
19 A    That's right.
20 Q    And isn't it true, Mr. Fong, that you have no proof that
21 Mr. Benun receives any compensation from any of the entities
22 you investigated?
23 A    That's right.
24 Q    And you never investigated personally, Mr. Fong, whether
25 Mr. Benun had any assets in Asia. Correct?

1  A     Correct.

2  Q     And isn't it true, Mr. Fong, you have no evidence of any
3  payments or transfers of assets by any of the entities you
4  investigated and Mr. Benun?

5  A     I need the question clarified, please.

6  Q     Isn't it true, Mr. Fong, you have no evidence of any
7  payments or transfer of assets by any of the entities you
8  investigated to Mr. Benun?

9  A     That's right.

10            MR. SIROTA:  Thank you, Judge.

11            THE COURT:  Any other examination on a cross basis
12 from this side?

13            (No verbal response)

14            THE COURT:  Redirect?

15            MR. SIEGAL:  Nothing further.

16            THE COURT:  All right.  Thank you, Ms. Ong.

17            MS. ONG:  Thank you, Your Honor.

18            THE COURT:  We will reassemble tomorrow at 9:30.  Who
19 is -- do you have more witnesses, Mr. Rosenthal?

20            MR. ROSENTHAL:  Mr. Benun, Your Honor, is the next
21 witness.

22            THE COURT:  You're going to call Mr. Benun?

23            MR. ROSENTHAL:  I'm going to call Mr. Benun.

24            THE COURT:  How many witnesses do you have, Mr.
25 Sirota?

1  MR. SIROTA: Judge, we've slated Mr. Benun to the
2  extent we don't develop what we need on his cross, and Mr.
3  Constentino, but frankly, we're not sure whether either or both
4  will be called.
5  UNIDENTIFIED ATTORNEY: Your Honor, I would like an
6  opportunity to -- we would like an opportunity to cross examine
7  Mr. Constentino on his declaration which came in.
8  UNIDENTIFIED ATTORNEY: He'll be -- Mr. Constentino
9  will be here tomorrow, as we agreed, with Mr. Rosenthal. I'm
10 not sure -- unless we -- until we get the rest of their case
11 whether there will be a need for us to put the case on.
12 UNIDENTIFIED ATTORNEY: And there's also the question
13 of the -- maybe, Your Honor, we can get a clarification as to
14 how to speed -- well -- Mr. Benun offered a declaration in
15 support -- in opposition to the motion -- two of them now, and
16 we obviously -- in the second case especially objected to its
17 admission into evidence.
18 THE COURT: The October 16th affidavit or
19 certification.
20 UNIDENTIFIED ATTORNEY: October 16th affidavit. If
21 in any way the debtor is going to rely on that affidavit or any
22 of the exhibits annexed thereto, then I would need an
23 opportunity to cross examine Mr. Benun on those documents.
24 UNIDENTIFIED ATTORNEY: Judge, Mr. Benun -- right now
25 that affidavit and the exhibits have not been stipulated to,

1  therefore, at the conclusion of Fuji's case, we will make the
2  decision whether we think we need anything with respect to
3  defending their claim with their burden of proof.  If, in fact,
4  we do, then we will offer Mr. Benun as our witness in our case.
5  Having said that, I'm not sure where Mr. Rosenthal is going
6  with his direct with Mr. Benun.  I may decide to examine Mr.
7  Benun on a whole host of issues depending upon what he does
8  with his direct.
9              THE COURT:  All right.  Is that satisfactory, Mr.
10 Rosenthal?
11             MR. ROSENTHAL:  Yes, of course.
12             THE COURT:  All right.  Thank you, counsel.  I know
13 it's been a long day, and I appreciate the patience of
14 everyone, and let's see if we can wrap it up tomorrow.
15             UNIDENTIFIED ATTORNEY:  We can leave this stuff here,
16 Judge?
17             THE COURT:  Yes, you can.  Now, Joe, we're going to
18 lock up the courtroom when everyone leaves?  Yes.  We'll open
19 it at 9:00 tomorrow in case counsel wants to come in and
20 prepare or earlier if you get here.  See Joe, and he can open
21 it for you or Bill Healey.  All right.  We're in recess until
22 9:30 tomorrow morning.
23                         * * * * *
24
25

## CERTIFICATION

I, PATRICIA C. REPKO, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_/s/ Patricia C. Repko_                      Date:   November 3, 2003
PATRICIA C. REPKO
J&J COURT TRANSCRIBERS, INC.