**LOWENSTEIN SANDLER PC**
MICHAEL S. ETKIN (ME 0570)
BRUCE BUECHLER (BB 0324)
S. JASON TEELE (SJT 7390)
65 Livingston Avenue
Roseland, NJ  07068
973-597-2500 phone
973-597-2400 fax

– and –

**STROOCK & STROOCK & LAVAN LLP**
LAWRENCE ROSENTHAL
BRIAN M. COGAN
KRISTOPHER HANSEN
180 Maiden Lane
New York, NY  10038
212-806-5400 phone
212-806-6006 fax
*Attorneys for Fuji Photo Film Co., Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JAZZ PHOTO CORP., | : | Case No. 03-26565 (MS) |
| | : | |
| | : | Hearing Date: Sept. 22, 2004 at 10:00 a.m. |
| | : | |
| | : | Oral Argument Requested |
| Debtor-in-Possession. | : | |
| | : | |

**REPLY OF FUJI PHOTO FILM CO., LTD. IN FURTHER SUPPORT OF ITS MOTION**
**FOR ORDER CONVERTING THE DEBTOR'S CHAPTER 11 CASE**
**TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE**

In further support of the motion (the "Conversion Motion") of Fuji Photo Film Co., Ltd.

("Fuji") seeking an order of this Court converting the above-captioned Chapter 11 case to a case

under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), Fuji submits this

Reply (the "Reply") to the objection of Jazz Photo Corp. ("Jazz") (joined in by Jack C. Benun

1

("Benun") (the "Objection") to the Conversion Motion and the letter submitted by the U.S. Trustee. Fuji respectfully represents as follows:

## PRELIMINARY STATEMENT

1.    The Debtor's allegations that Fuji's Conversion Motion is an "attempt to accelerate remedies in the Bankruptcy Court that Fuji could not obtain outside of bankruptcy" and "expand its rights before this Court" is an effort by the Debtor to distract this Court's attention away from the irrefutable facts of this case. The reality is that Jazz (i) has continued to violate Fuji's patents post-petition, (ii) is operating at a substantial loss, (iii) is hopelessly administratively insolvent with only a contingent unliquidated litigation claim as the allegedly single potential source of payment, (iv) will be unable to effectuate a plan of reorganization, and (v) has not adequately responded to Fuji's several requests for information regarding accounting and other discrepancies. In sum, this case must be converted not only to prevent further violations of Fuji's patents, but also to ensure that there is value to be distributed to creditors and that Jazz's non-domestic operations finally are subjected to the light of day.

2.    Fuji submits that the Motion contains an adequate and accurate factual and legal discussion of the issues, and therefore, Fuji has intentionally limited this Reply to address only the letter objection of the U.S. Trustee and the most abhorrent allegations and misrepresentations of facts and law contained in the Debtor's Objection.

## ARGUMENT

**A.    The Recent Determination By The ITC Is Final As To Jazz's Continued Post-Petition Infringement Of Fuji's Patents And Is Sufficient Cause by Itself For Conversion**

3.    In light of the ITC's recent determination, the conclusion that Jazz has and continues to violate the Cease and Desist Order by violating Fuji's patents is inescapable. Despite the Debtor's misleading assertion to this Court that the ITC's recent determination is only a "partial" ruling on the grounds the ITC has not yet set the level of the civil penalty, the

2

finding of infringement, the ALJ's conclusions as to the worthless nature of the ICP system and the fact that about 85% of the cameras purchased from Polytech infringed Fuji's patents are final. See Determination of ITC not to review ALJ's determination on violation (infringement) and that Jazz and Benun are subject to the Cease and Desist Order, but requesting comments on remedy, Rosenthal Dec. in support of Lift Stay Motion, Exh. 4, at 2.[1]  The only issue left unresolved is for the ITC to fix the level of the civil penalty or, in other words, damages.  The liability of Jazz and Benun have been fully and finally determined by the ITC.

4.    Jazz continues to rely on the "ICP" system  both here and in a recently filed lawsuit in the Court of International Trade ("CIT") filed by Jazz and Photo Recycling Enterprises to thwart an attempt by Customs to enforce the ITC Orders in light of the ITC's recent determinations.  See Objection ¶ 38; Benun Aff. In support of Objection ¶¶ 15-16; Fuji Reply to Lift Stay  Motion at ¶11.  The ICP system assumes that U.S. based photoprocessors and collectors will only sell PRE (or other suppliers of shells to Jazz) shells of cameras first sold in the United States.  It does nothing to determine whether PRE's suppliers import shells and sell them to PRE at a huge mark-up.  It does nothing to determine whether PRE or Jazz's other shell suppliers import shells, and sell them to Polytech.  In fact, as found by the ALJ, the ICP system does not prove compliance with the Federal Circuit's first sale rule.  EID(II) at 25-38, Rosenthal Supp. Dec., Exh. 17.  The ALJ found  that "there were practical ways for distinguishing between foreign and U.S. shells,"  not including the ICP system, findings which are now final.  EID(II) at 38, Rosenthal Supp. Dec. Exh. 17.

5.    The only change in procedure alleged by Jazz is Jazz's assertion that third party Polytech is now screening for Jazz packaging to avoid the "reloaded reload" problem.  Jazz makes the unsupported assertion that all of its foreign shell cameras were "reloaded reloads."  However, in its post trial papers in the ITC proceeding, Jazz argued strenuously and "Benun testified that approximately 6% of the shells collected from the U.S. are previously reloaded

---

[1]    Reference here to "Rosenthal Dec." and "Rosenthal Supp. Dec." are to the Rosenthal Declaration filed with Fuji's Lift Stay Motion and the Supplemental Rosenthal Declaration filed with the Reply thereto, respectively.

cameras using foreign shells." (Post Hearing Brief of Jazz Photo Corp. and Jack C. Benun at 58-59, Rosenthal Supp. Dec. Exh. 22). The ITC found that 40% of Jazz's cameras were made from foreign shells. The final determination of the ITC that the ICP system failed as proof of first sale is still applicable to Jazz's current cameras, since the purported change, if real (no Polytech employee has testified that they made the alleged change), does not address the fatal deficiencies found by the ALJ and ITC. Accordingly, rather than proving current non-infringement as claimed by Jazz, the fact that Jazz still relies on an insufficiently modified ICP system is strong evidence that Jazz continues to infringe. In any event, the nonfinality of the penalty phase of the Enforcement Proceeding not only will have no effect on the ITC's conclusion that "the Jazz ICP should be given no weight in determining the number of LFFPs in issue that were first sold in the United States" (EID(II) at 38, Rosenthal Supp. Dec. Exh. 17), but will also not affect the finding that Jazz engaged in massive post-petition infringement in bad faith.

6.      Fuji contends that Jazz's post-petition infringement, as found by the ALJ and ITC, is sufficient cause by itself to convert this case to Chapter 7. Additional facts such as pre-August 21, 2001 infringement as found by the District Court, and continued infringement post December 12, 2004, further demonstrate that Jazz should no longer be acting as a debtor-in-possession in Chapter 11, but are not necessary to a ruling on this Motion.

7.      The U.S. Trustee, in opposing conversion, adopts Jazz's mischaracterization if the findings of the ITC's determination and incorrectly assumes that the ITC has not reached a conclusion as to post-petition infringement.[2] As pointed out above, in fact the ITC has finally determined that Jazz and Benun infringed Fuji's patents post-petition on a wholesale basis. The U.S. Trustee also erroneously points to the District Court determination of pre-August 21, 2001 infringement as not being "final." The District Court Judgment is in fact final and binding on the

---

[2]     In this context, the Court should be aware of Jazz's misleading statement in ¶ 65 of the Objection, that "Customs currently is actively determining whether the Debtor is complying with the most recent ITC Determination and has not "excluded" the import of SUC's..." This statement is, at best, misleading insofar as Customs has, prior to September 10, 2004 (when Jazz filed the Objection), excluded Jazz's single-use cameras and Jazz not only knew of this action by Customs, but was preparing (or had by September 10 prepared) a complaint in the Court of International Trade to challenge Customs' exclusion of Jazz's single-use cameras.

4

parties even though it is on appeal.  In any event, this court has already ruled that pre-petition infringement is not a sufficient ground alone for the appointment of a Chapter 11 trustee, nor would it be cause for conversion.  It is the post-petition infringement which is cause for conversion.  The ITC's finding of post-petition infringement is based on the Federal Circuit's ruling in <u>Jazz v. ITC</u>, not on the District Court's findings, and the finality of the ITC's determination is in no way affected by the outcome of the District Court appeal.  It is respectfully submitted that a final determination of the ITC that "would warrant the immediate liquidation of the debtor" has occurred.  U.S. Trustee's letter objection, at 2.

**B.      Several Unanswered And Unresolved Discrepancies Remain Despite The Debtor's Representations To The Contrary**

8.      Although the Objection alleges that the Debtor has provided Fuji with sufficient information to resolve the several accounting discrepancies found by Fuji, the Debtor has not addressed the following:[3]

A.      Why was Jazz UK's Management Fee not been paid was the subject of an unexplained credit and was raised by $8,000 to include monies for JCB Consulting?  <u>See</u> Fuji's Opposition to Jazz's Motion to Quash Fuji's Rule 2004 subpoena at ¶ 11(a);

B.      Why did Jazz have Jazz UK pay Cossentino's counsel post-petition <u>on Jazz's behalf</u> despite representations to the contrary to this Court?  <u>Id.</u> at ¶ 11(b).

C.      Why do the produced reconciliations of Polytech payments and receipts not support the numbers in the Operation Reports, regarding payments to Polytech (and PRE), Agfa  and Seven Bucks?  Why is at least one payment shown in the Operating Reports missing from the reconciliations?  <u>Id.</u> at ¶ 12(a)-(f).  Why are there still some missing Polytech invoices?  Supplemental Siegal Declaration in support of Administrative Claim Motion ¶ 8.

D.      Why does Jazz claim that payments to PRE are on account of Polytech, which is purchasing the shells, when Benun represented to the Court of International Trade that "Jazz has already exported some 3,500,0000

---

[3]   <u>See</u> Fuji's Opposition to Jazz's Motion to Quash Fuji's Rule 2004 Subpoena and Declaration and Exhibits in support thereof for additional discrepancies.

camera shells from the United States" and will "suffer economic losses of more than $1.75 million for monies paid to acquire these shells …." if not able to import cameras made from such shells?   Rosenthal Supp. Dec. Exh. 21 (in support of Reply to Fuji's Lift Stay Motion) at ¶11.  Benun represents to the CIT that Jazz would also suffer "$6.3 million [in losses] in amounts paid to foreign processors to repair these cameras …."  Id.

**C.     The Debtor's Allegation That There Is A Changing Landscape Of What Constitutes Infringement Is Disingenuous and Misleading**

9.     It is not the landscape that keeps changing (Objection, ¶55), but Jazz's actions. When Jazz appealed the original ITC decision to the Court of Appeals, it argued that all its suppliers did was replace film, paper and batteries.  It never alleged that it replaced, for example, half of a back or a full back.  When it began importing cameras with half backs and full backs, it never obtained an opinion of counsel nor did any tribunal (for example the ITC in an Advisory Opinion) ever rule on whether a half back or full back refurbishing method was or was not infringing.  Thus, it is Jazz's continuous expansion and change of the nature of its refurbishment activities that lead to the "changing landscape."  No court has ever decided that what was once permissible repair is now infringing reconstruction.  Accordingly, it is Jazz that is at fault for expanding the steps of the process and for failing to confirm that it was processing only U.S. shells.

10.     The 2001 Federal Circuit decision set forth a clear safe harbor.  The recent findings by the ALJ, as affirmed and adopted by the ITC, show that Jazz chose to test the limits of or turn a blind eye to certain aspects of that decision post-petition.  Although the manner in which Jazz chose to violate the Cease and Desist Order may have changed, no new findings restricting what constitutes compliance with the law were made by the recent ITC proceeding. Rather, the ALJ simply analyzed whether Jazz infringed Fuji's patents in violation of the Cease and Desist Order in light of the Federal circuit decision in Jazz v. ITC, and determined that Jazz was in violation of same.  The District Court in Fuji v. Jazz had done the same in light of the August 21, 2001 Federal Circuit decision.

**D.    The Affidavit Of Jeffery I. Kaplan Is Nothing More Than An Attempt By The Debtor To Re-Litigate An Issue That Has Been Determined By The ITC**

11.    The affidavit of Jeffery I. Kaplan filed in support of the Debtor's objection should not even be considered by this Court, as it is nothing more than an attempt by Jazz's patent attorney to make legal arguments in an affidavit.  Even if considered, Fuji strongly disagrees with Kaplan's arguments/conclusions and, at this point, the issue as to whether it is realistic for Jazz to now be able to prove in still another proceeding that Jazz is presently not infringing is irrelevant.  This is because the parties previously agreed to allow the ITC to determine if Jazz continued to infringe post-petition.  After an extensive evidentiary hearing, the ITC found Jazz to have infringed Fuji's patents post-petition on a massive scale without a good faith effort at compliance.  That Kaplan believes that the infringement has ended after nine years of continuous infringing activity as found after three hearings, and one Court of Appeals decision is irrelevant to the Conversion Motion.

12.    Jazz has been arguing that notwithstanding the findings of the ITC, Customs has always found its cameras to be noninfringing.  Interestingly, Jazz only cites to the ALJ's findings in the EID(II) for a description of Customs' alleged enforcement activities, which are merely supported by vague deposition testimony of a Jazz wit ness.  Objection at ¶31.  There are, however, no details in the record as to what action has been taken by Customs, other than in two instances, where Jazz submitted documents with altered ICP (MLN/SLN) information.  Thus, the record contains no indication of the nature of Customs' past clearance procedures, whether they looked at any cameras and the evidence, if any, that Jazz used to link a camera to a U.S. shell and a specific refurbishing process.

13.    What is clear, however, is that in light of the ITC's recent findings, Customs has cracked down on Jazz and no longer permits Jazz's cameras to breeze through the clearance procedure.  Jazz cannot comply with the proof of repair now requested by Customs.  This prompted Jazz and PRE to file an action with the U.S. Court of International Trade, a fact that Jazz chose to withhold from this Court in its Objection. Jazz opposed Fuji's motion to intervene

7

in the CIT proceeding, but to date, Fuji has been excluded from that proceeding.  However, if Jazz takes the position that Customs' lax attitude in the past proves noninfringement in the past, then Jazz must agree that Custom's current position proves infringement in the present.  In any event, Jazz's continued reliance on Customs' lax prior actions without revealing Customs' change in attitude is just one more reason not to accept any representations by Jazz.  Fuji's Reply to Objection to Lift Stay Motion, ¶¶ 4-6.

14.    Finally, Jazz's assertion, in ¶ 41 of the Objection, that Fuji has twice assisted Imation to adjourn the Imation trial is baseless and sanctionable.  Fuji and Imation are not, nor have they been, in league with respect to any aspect of the Imation trial or, specifically, the adjournment thereof.  Jazz makes this assertion without any factual basis and should be required, at a minimum, to formally withdraw the statement or proffer facts to support it.

### E.    Jazz's Continued Post-Petition Infringement Prejudices The Rights Of Fuji And Creditors In General

15.    Jazz is using the Bankruptcy Code as a shield behind which it continues to infringe on Fuji's patents by continuing to import in excess of 1.2 million infringing cameras every month.  As a result of Jazz's post-petition infringement, Fuji has suffered, and continues to suffer, material harm to its intellectual property rights resulting in what will likely be a multi-million dollar administrative claim against the Jazz bankruptcy estate.  Such a large administrative claim by Fuji, which continues to mount, will significantly impair the Debtor's ability to make distributions to Jazz's pre-petition creditors, including Fuji.  Thus, Jazz's post-petition infringement not only directly affects Fuji's intellectual property rights, but the continued post-petition infringement also affects the likelihood that Fuji will not be compensated for damages it suffered as a result of Jazz's pre-petition infringement and other unsecured creditors' distribution will likewise be diluted.

16.    The U.S. Trustee's argument that it is not the Chapter 11 proceeding which "somehow allow(s) Jazz  to avoid patent infringement laws," ignores the automatic stay and the

8

limitations on the ability of the ITC to affirmatively force compliance with its orders.[4] The patents at issue are Fuji's, not the ITC's or Customs and are a wasting asset. Jazz should not be permitted to continue to infringe while under the protection of Chapter 11 which conduct is nothing more than an involuntary unilateral license to Jazz to profit from Fuji's intellectual property without any corresponding benefits to Fuji.

### F. Fuji's Conversion Motion Is Not An Attempt To Expand Fuji's Rights

17.    Fuji's right to seek the conversion of Jazz's voluntary Chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code is by no means in "complete contravention of the Bankruptcy Code and [Fuji's] prior actions (e.g. stay relief to proceed before the ITC)." See Objection, ¶57. As Fuji anticipated when it sought to lift the stay to allow the proceeding before the ITC to continue, the ALJ found that the Debtor was infringing Fuji's patents post-petition on a massive scale. The ITC later affirmed the findings of the ALJ. This latest ruling of the ITC is an additional, and, in fact, the most significant basis under section 1112(b) to convert the Debtor's case to one under chapter 7. See 11 U.S.C. § 1112(b).

18.    Jazz's argument that Fuji is somehow attempting to "accelerate remedies in the Bankruptcy Court that Fuji could not obtain outside of bankruptcy" (Objection, ¶ 56) is ridiculous. Jazz voluntarily filed Chapter 11 to avoid the Fuji Judgment and to prevent Fuji from levying on Jazz's (or Benun's) assets after Jazz sought, but was denied, a stay pending appeal. Thus, the fact that Fuji has different remedies in the context of this Chapter 11 case is due solely to Jazz's voluntarily having filed for bankruptcy protection over one year ago. Absent bankruptcy, Fuji could and would have, among other things, levied on Jazz's assets to satisfy its judgment.

---

[4]    The U.S. Trustee also asserts that dismissal, rather than conversion, is the most appropriate of the two remedies to the extent the Court grants the Motion. Fuji disagrees and submits that converting the Jazz case is the most appropriate remedy. Recognizing that the choice to convert or dismiss lies within the Court's discretion, Fuji submits that conversion is the most appropriate remedy because it would lead to an orderly liquidation of the estate by an independent fiduciary and enable the Chapter 7 trustee to investigate potential causes of action by the estate against Benun and others. By contrast, dismissing the case would force Fuji and other creditors to return to court to enforce their rights.

SSL-DOCS1 1497035v4

**G.     Conversion Is Necessary At This Time To Stop The Continued Loss Of Estate Assets And Prevent Continued Harm To Fuji**

19.     After making use of the automatic stay and other statutory provisions of the Bankruptcy Code for approximately 16 months, the Debtor has (i) successfully caused the estate to shrink by $3,000,000, (ii) been found by the ITC to have violated Fuji's patents post-petition on a massive scale, and (iii) likely incurred multimillion dollar administrative claims as a result of such post-petition infringement.  The Debtor has not lived up to its fiduciary obligations to its creditors and has not refrained from acting in a manner that negatively impacts the estate.  Thus, the Debtor's case should be converted immediately.[5]

20.     Contrary to the contention of the U.S. Trustee, since the present operation under Chapter 11 has failed to result in a distribution to creditors, it has dissipated the assets which would otherwise have been available for such distribution.  It is therefore likely that conversion to Chapter 7 will yield a greater distribution (if there is a recovery from Imation), since the present continuing losses would be stopped.  As noted in earlier pleadings, and as apparently admitted by Jazz, Jazz's lawyer in the Imation case can and will proceed even if conversion takes place.  Nowhere in his Affirmation in Opposition to this Motion does Mr. Frazza suggest that he will not proceed if the Conversion Motion is granted.

**H.     Jazz Is Misusing The Protections Afforded To It By The Bankruptcy Code**

21.     Jazz filed its bankruptcy petition to prevent Fuji from foreclosing on its pre-petition judgment and has since used the automatic stay as a shield behind which it has continued to infringe on Fuji's patents with impunity.  Although the Debtor "vehemently disputes the ALJ Recommendation and ITC Determination and will appeal the decision [of the ITC]," the reality is that rather than adhere to its fiduciary obligations to protect the interests of its creditors, Jazz

---

[5]     While Jazz argues that it operates at a profit less legal expenses (Opposition, ¶ 12), Benun's representations to the CIT reveal operation at a loss before overhead ($8.05 million with direct expenses vs. $7.875 million in sales revenues).  Benun Aff. ¶ 11; Rosenthal Supp. Dec. Exh. 21.  It would appear that Jazz is selling below cost.

has continued to infringe on Fuji's patents post-petition, giving rise to large administrative claims, thereby jeopardizing any recovery for unsecured creditors. <u>See</u> Objection, ¶66. In fact, rather than attempting to develop less troublesome businesses, they have increased the portion of their business relating to infringing cameras to 85% of the business.

### I.    The ITC Determination Should Be Given Preclusive Effect

22.    Because Jazz consented to allow the ITC to determine whether it, Benun and Cossentino violated the ITC's orders after August 21, 2001, Jazz should be judicially and equitably estopped from arguing that either the EID(II) or the ITC's decision affirming EID(II) should not be given preclusive effect by this Court. Jazz cannot be permitted endless bites at the apple.

### J.    Conversion Is Warranted Under Section 1112(b)(1)

23.    Fuji and its counsel are mystified by the Debtor's allegation that they somehow misstated the law in the Conversion Motion by stating that "Section 1112(b)(1) provides that a case may be converted when the debtor is suffering continuing losses or the estate is being diminished and there is an absence of a reasonable likelihood of rehabilitation." <u>See</u> Objection, ¶82. The quote from Fuji's Motion, at ¶ 16, is consistent with the citation from <u>In re Adbrite Corp.</u>, 290 B.R., 215 (Bankr. S.D.N.Y. 2003). This unfounded allegation by Jazz is, in itself, a violation of Rule 3.3(a) of the New Jersey Rules of Professional Conduct and, at the very least, requires an apology and clarification by Jazz to both this Court and Fuji for its baseless accusation. <u>See</u> N.J. Rules of Prof'l Conduct R. 3.3(a)(1) (2003) ("A lawyer shall not knowingly: . . . (1) make a false statement of law to a tribunal;").

24.    Notwithstanding certain factual differences between this case and those cases cited by both Jazz and Fuji, all cases that are cited support converting this case to one under Chapter 7. As more fully described in the Conversion Motion, Jazz <u>is</u> suffering continuing losses, the estate <u>is</u> being diminished by the Debtor's activities <u>and</u> there <u>is</u> no likelihood of

rehabilitation.  Thus, cause exists for this Court to convert Jazz's Chapter 11 Case to one under Chapter 7.  The ITC's recent ruling is the proof of post-petition infringement by Jazz on a massive scale that this Court has been waiting for, and such infringement will inevitably give rise to large administrative claims, regardless of whether this Court grants Fuji's motion to estimate Fuji's administrative expense claim at this time, or whether there is a subsequent estimation hearing as to the amount of such claim, or whether the amount of such claim is later determined by the District Court.  Fuji's administrative claim alone (without consideration of the penalty imposed by the ITC) makes the likelihood of rehabilitation extremely remote, if not impossible.

### K.    Conversion is Warranted under Section 1112(b)(2)

25.    The standard under Section 1112(b)(2) is whether it is reasonable to expect that a plan can be effectuated within a reasonable time, not whether there exists any possibility that a debtor may effectuate a plan.  See Collier ¶1112.04[5][b]  (15th Edition) (citations omitted). After more than 15 months, and several extensions of its exclusive periods, Jazz has been unable to even file a plan of reorganization.  Jazz's continued reliance on overturning Fuji's pre-petition judgment and being successful in the Imation litigation[6] is simply not a reasonable plan of reorganization.  See Objection, ¶53.  Such a plan requires creditors to continue to wait for an indefinite time while the likelihood that the Debtor will be able to make any distribution to creditors is reduced each day the Debtor continues its Chapter 11 case.  Moreover, Jazz wrongfully used and continues to use this Chapter 11 case to carry on its infringement with impunity.

---

[6]    Fuji is confused and troubled as to why Jazz believes that a trustee will settle the Imation litigation "on the cheap" after Jazz's Chapter 11 case is converted.  See Objection, ¶41.  First, the Chapter 7 Trustee, not Fuji will determine the value of the Imation litigation and whether the same should be settled and for how much. Secondly, if an independent third party is likely to value the Imation litigation at an amount that is less than the amount that the Debtor and its counsel currently allege, perhaps the Debtor has over-inflated the value of the Imation litigation.

SSL-DOCS1 1497035v4

**L.        Conversion is Warranted under Section 1112(b)(3)**

26.    Jazz's 15 month delay in filing a plan of reorganization, combined with Jazz's unrealistic chances of a successful reorganization, constitutes unreasonable delay, and the fact that Fuji has suffered, and continues to suffer, irreparable harm at the hands of Jazz, clearly constitutes prejudice sufficient for a finding of cause under section 1112(b)(3) of the Bankruptcy Code.  Thus, this Court should convert Jazz's case to Chapter 7 without further delay.

## CONCLUSION

27.    It is imperative that this Court convert Jazz's Chapter 11 case to one under Chapter 7.  In addition to misusing the protections of Chapter 11 as a mechanism by which Jazz was able to continue to infringe on Fuji's patents, this Court should also consider the following: (i) the downfall of Jazz was caused by its pre-petition infringement on Fuji's patents; (ii) Jazz continues to sustain large operating losses; (iii) Jazz's business without infringing on Fuji's patents has no prospects of success; (iv) Jazz has little hope of ever confirming a plan of reorganization, the legitimate goal of every Chapter 11 case, thus, Fuji believes that it is merely using this Chapter 11 case to hold Fuji hostage to its compulsory royalty-free licensing scheme; (v) the Jazz estate is clearly insolvent; (vi) failure to convert this case and thereby halt Jazz's continued infringement will result in further accrual of administrative claims of Fuji and the ITC, thereby minimizing the recovery for unsecured pre-petition creditors; (vii) Jazz has failed to adequately explain large discrepancies in its operating reports; and (viii) Jazz's foreign affiliate activities continue to lack the transparency that has been a concern of Fuji and this Court.

28.    As the Court noted in its opinion dated August 3, 2004:

> Benun and Jazz have operated in a commercial zone of substantial jeopardy.  Patent infringement in the low-tech, high-profit market of single-use cameras was a risk knowingly undertaken by Benun and Jazz.  They have little to complain about when their gamble turned out badly and a powerful competitor asserts its full range of rights against them.

In re Jazz Photo Corp., 312 B.R. 524, 542 (Bankr. D.N.J. 2004)(Stern, J.).

SSL-DOCS1 1497035v4

29.    For above-stated reasons, as well as those contained in the Conversion Motion, Fuji respectfully requests that the Court enter an order, substantially in the form submitted herewith, converting Jazz's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code and granting Fuji such other and further relief as may be just under the circumstances.

Respectfully submitted,

**LOWENSTEIN SANDLER, PC**

By:    /s/ Michael S. Etkin
Michael Etkin, Esq.
Bruce Buechler, Esq.
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.597.2500
Facsimile: 973.597.2400

**-- and --**

**STROOCK & STROOCK & LAVAN LLP**

Lawrence Rosenthal, Esq.
Brian M. Cogan, Esq.
Kristopher M. Hansen, Esq.
180 Maiden Lane
New York, NY 10038
Telephone: 212.806.5400
Facsimile: 212.806.6006
Attorneys for Fuji Photo Film Co., Ltd.

Dated: September 20, 2004

14