## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

------------------------------------------------------------

IN RE

    JAZZ PHOTO CORP.,

           Debtor.

------------------------------------------------------------

Chapter 11

BKY Case No. 03-26565-MS

### AFFIDAVIT OF WILLIAM R. STOERI, ESQ. IN RESPONSE TO THE AFFIDAVIT OF PETER J. FRAZZA, ESQ. SUBMITTED CONCERNING FUJI PHOTO FILM COMPANY'S MOTION TO CONVERT THE DEBTOR'S CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

WILLIAM R. STOERI, being first duly sworn, states as follows:

1.  I am an attorney of law in the state of Minnesota.

2.  I represent Imation Corporation in the lawsuit *Jazz Photo Corp. v. Imation Corp.*, Docket No. 99-2505 ("the Imation litigation").

3.  Imation is also a creditor of Jazz Photo Corporation in the bankruptcy proceedings.

4.  I submit this affidavit in response to September 9, 2004, Affidavit of Peter J. Frazza because certain facts are not contained in Mr. Frazza's affidavit that I believe should be presented to this Court.

5.  The summary judgment decision in the Imation lawsuit. Mr. Frazza's affidavit fails to mention several aspects of the judge's ruling on summary judgment motions in the Imation lawsuit.

- Jazz Photo brought its own motion for partial summary judgment. That motion was denied in its entirety.

- The judge ruled in favor of Imation and granted its motion for summary judgment dismissal of all of Jazz Photo's warranty claims, express and

implied. Thus, the warranty claims, which have a lower standard of proof than fraud and RICO claims, are now gone from this case.

- The judge ruled in favor of Imation and granted its motion for summary judgment dismissal of Jazz Photo's New Jersey Consumer Fraud claims.

- The judge ruled in favor of Imation and granted its motion for summary judgment disposing of all Jazz Photo's claims, including its fraud and RICO claims, concerning sale of films in 1999 and after. In 1999, after the Wal-Mart recall of Jazz Photo single-use cameras, Jazz Photo purchased from Imation another 2.7 million rolls of the exact same film Jazz Photo now alleges was defective. But the judge found it was undisputed that Jazz Photo had no problems with this film or the cameras containing it in 1999. Imation intends to show at trial that in 1999 Jazz Photo made changes in its quality control system for reloaders and shipping procedures, proving that when the film was handled properly, it performed properly.

- The judge ruled in favor of Imation and granted summary judgment on Imation's counterclaim. This counterclaim was for the price of the film purchased in 1999 for which Jazz Photo never paid. As a result, Jazz Photo now owes Imation over $1 million.

- As a result of the judge's rulings, all Jazz is left with is its higher-standard-of-proof fraud and RICO claims.

6.  Jazz Photo's damage claim. Absent from Mr. Frazza's latest affidavit is reference to the Magistrate Judge's ruling on Imation's motion in limine concerning Jazz Photo's damages expert Mr. Campos. The Magistrate Judge ruled that Imation "is correct to state Campos' use of a 10-year window for damages is speculative" and he limited the

claims to the period ending 2001. *See* Ruling on Motion in Limine #3. This decision alone reduces Jazz Photo's damage claim by half.

    7. <u>Imation's Optimism</u>. While Mr. Frazza states his optimism concerning the case, Imation believes that the rulings to date support its optimism far more than Jazz Photo's. Already, based upon the summary judgment determination and motion in limine rulings, Jazz Photo's warranty claims have been dismissed, Imation has been granted summary judgment on its counterclaim, and Jazz Photo's damage claims have been cut in half. Jazz is left only with the fraud claims which Imation believes Jazz Photo will have tremendous difficulty proving because its own experts' testimony and the testimony of its own CEO, Roger Lorenzini, contradict positions Jazz Photo must take to prove such claims.

    Imation further believes that a neutral assessment of Jazz Photo's damages claims as set forth in the expert reports of Mr. Campos and Imation's damages expert, Mr. Zatta, will establish that, even if Jazz were to succeed on the difficult task it has of establishing liability, its total damages would be but *a small fraction of the amount Jazz Photo owes its creditors.*[1] Imation urges such an assessment by this court.

    Imation has been and remains willing to discuss a reasonable resolution of this matter before trial. But to date Jazz Photo, through its representative Jack Benun, has been unwilling to resolve this matter for anything less than an amount exceeding what it (and he) owes creditors. As referenced above, Imation believes that any realistic assessment of Jazz Photo's damages (without even considering its chances of succeeding on its liability claims) does not support any such payment. Imation further believes that if this case goes

---

[1] For example, Mr. Campos' lost profit calculation completely fails to include any allowance for the Fuji royalty of $.56 for all SUCs sold before August of 2001. By simply taking that into account, a fact which Imation is confident must be considered as a matter of law, Jazz Photo's lost profit claim is further drastically reduced.

to trial, Jazz Photo and its creditors most likely will get nothing because the jury will conclude that Roger Lorenzini, as CEO of Jazz Photo, could not be deceived by the very same product marketing statements that he personally made and approved as Imation's Business Director. Imation believes that, if a rational decision maker were appointed, legitimate settlement negotiations could take place.

I will be available at the September 22, 2004, hearing to answer any questions the Court has at that time.

FURTHER AFFIANT SAYETH NOT.

Dated:   September 21, 2004

William R. Stoeri

Subscribed and sworn to before me

this 21st day of September , 2004.

Notary Public

ALICE A. JAWORSKI
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005