November 1, 2004

Our File: 1014-01

# **MEMORANDUM**

To:      Mr. Jack Benun
             Jazz Photo Corporation

From:    John M. Peterson
             NEVILLE PETERSON LLP

Re:       Decision in *Jazz Photo Corporation v. United States*. Court of International Trade No. 04-00494

---

       As we discussed, Judge Stanceu announced his decision in the above-referenced case this morning. He ruled that Jazz Photo had proven the admissibility of all of the cameras involved in the two entries which were the subject of the lawsuit, with the sole exception of cameras made from shells purchased from Seven Bucks, Inc. As noted below, the ruling with respect to the Seven Bucks shells results from a failure of trial proof which, in our judgment, can be corrected.

       This memorandum summarizes the substance of the decision, which was announced from the bench. A formal opinion to accompany the decision will be issued in the next few days. This memorandum also addresses how we propose to use the decision to secure the release of other Jazz Photo shipments of one-time use cameras pending at ports of entry.

**Synopsis of Decision**

       **Permissible Repair:**

       Judge Stanceu found that the trial evidence demonstrated that all of the cameras had undergone a "permissible repair" overseas at the Polytech Enterprise plant in Shenzen. Thus, Jazz met the "permissible repair" requirement set out by the Court of Appeals for the Federal Circuit in

2

*Jazz Photo Corp. v. United States International Trade Commission*, 264 F.2d 1094 (Fed. Cir. 2001).

### First Sale

The Court found that Jazz had proven, by a preponderance of the evidence, a patent-exhausting "first sale" with respect to all cameras which had been exported by Photo Recycling Enterprises Inc. ("PRE"). This finding covers 14 of the 15 Master Lot Numbers (MLNs) of exported shells which were the subject of the entries at bar.

The Court held that the combination of (1) testimony that PRE purchased camera shells from U.S. photoprocessors, together with (2) PRE's contractual requirement that "collectors" only furnish U.S.-collected shells, plus (3) the sorting of the shells by Polytech, established by a preponderance of the evidence that the camera shells used to make the imported cameras had undergone a patent-exhausting "first sale" in the United States. In this regard, the Court held that it was the combination of *U.S. shell collection* and *the sorting process* which demonstrated a reliable program to ensure that the exported shells had undergone "first sale". Proof of shell collection *or* sorting, without the other, would not be sufficient to prove "first sale", the Court said.

With respect to the single MLN of cameras purchased from Seven Bucks, Inc., the Court found that there was evidence of two sorting processes, but no proof that the shells had been gathered from U.S. photoprocessors. Accordingly, he held that Jazz had not carried the burden of proof with respect to this single export shipment. [In fact, it appears that the Seven Bucks shells were in fact all gathered in the U.S. from the Ritz Photo chain of photoprocessing stores; unfortunately, our witness did not know this, and could not testify to it at trial].

### Release of Merchandise: Segregation and Bonding

Under the CIT's rules, the Court's judgment is normally subject to a 30-day stay of execution. Mindful of the fact that Jazz needs its product immediately, Judge Stanceu directed the parties to confer and agree on an arrangement which would allow the release of the merchandise under bond to protect the government.

Judge Stanceu asked whether it was possible to segregate the shells from the "Seven Bucks" MLN from other shells in the shipment. I indicated that I believed it was possible, based on the camera model and MLN markings on cartons. If the segregation can be performed, the non-Seven

3

Bucks cameras can be imported[1].

---

[1]     Judge Stanceu noted that, as to the cameras made from Seven Bucks shells, he would not be entering a judgment of infringement. He would simply be issuing a judgment that Jazz had not proven, by a preponderance of evidence, that these shells had undergone the patent-exhausting "first sale" which must be shown in order for goods to be entered without regard to the General Exclusion Order.

4

We can also segregate the Seven Bucks cameras in a bonded warehouse and attempt to re-enter them on a new entry, providing Customs with proof that the cameras were in fact produced from shells received from United States photoprocessors[2].

With respect to bonding, Judge Stanceu took note of Judge Hochberg's findings regarding the per-camera value/damages of infringement, and suggested that this figure (about 56 cents per camera) would be an appropriate basis to begin discussing bonding. I indicated that the Bankruptcy Court might not allow Jazz to post penal bonds which might need to be collateralized. However, I suggested that Jazz could either (1) post single-entry bonds to cover each shipment released or (2) increase the principal amount of its term bond. In either case, the bond would secure the government for any liquidated damages which might be assessed in the event the released cameras were subsequently determined to be subject to redelivery.

### **"Tourist" or "Personal Use Quantity" Cameras**

During trial, there was much discussion regarding whether the Polytech screening process adequately screened out so-called "tourist cameras", i.e., cameras imported by travelers in small, personal use quantities. These cameras are excepted from exclusion puruant to paragraph 4 of the General Exclusion Order. Judge Stanceu's ruling indicates that the possible presence of such cameras in the shells exported for repair did not affect the admissibility of Jazz's shipments.

The Court noted at there was some "inherent unreliability" built into any sorting process, including Polytech's. However, tourist shells, if they exist in a shipment, are present in very small quantities and are likely unidentifiable. No evidence was produced to show, for example, that all "tourist cameras" had foreign-language labels, or that all cameras which experienced a "first sale" in the United States were labeled in English.

The Court said it would not hold that "tourist cameras" have their patent rights exhausted by some means other than "first sale" in the United States. However, the Court found that the exception to the General Exclusion Order identified by the Federal Circuit in 2001 must be interpreted in such a way that it is a "workable exception", and not one which requires an importer to have access to confidential information in the possession of a patentee. [Otherwise, the Court found, the exception identified by the Federal Circuit would be a "dead letter"].

---

[2]    Judge Stanceu made clear that Customs was in no way to attempt any seizure or enforcement action with respect to the cameras which were the subject of the "Seven Bucks" MLN.

5

### **Release of Other Entries**

The CIT's ruling technically only covers the two entries before it. However, the Court asked the parties to work together on a proposal for ensuring the release of other camera shell entries.

We have written to Customs, offering to provide MLN documentation for each export shipment of shells used to make imported cameras. We have also proposed that shipments be released under bond, either an augmented General Term bond, or single-entry bonds.

To ensure that this work goes smoothly, I need to make sure that we have the following information:

> Entry number and port of entry for each shipment awaiting entry;

> A list of all MLNs associated with each entry;

> MLN documents for all MLNs involved with these entries (I believe we have most of this); and

> If possible, documents concerning the source of the "First Bucks" shells of MLN 463, and any other MLNs of shells sourced from First Bucks.

### **Conclusion**

Today's decision is a substantial victory for Jazz. It validates that the company has now established a shell-sourcing program which allows it to imported repaired cameras which do not violate Fuji patents, and which cannot lawfully be excluded under the General Exclusion Order for *Certain Lens-Fitted Film Packages*. The sole area in which the Court did not rule in Jazz's favor – the Seven Bucks camera shells – can be remedied. These cameras in fact are collected in the U.S. from domestic photoprocessors, and this can be proven; we just didn't have the information to hand during trial.

Our thanks to everyone who contributed to this successful effort, including our witnesses (whose testimony was obviously viewed as highly credible by the Court) and all of those who helped us gather the information we needed for trial on a very short timeline.

If you have any questions concerning the decision, please contact us at (212) 635-2730.

Cc:   Michael Sirota, Esq.
      Jeffrey Kaplan, Esq.
      Mr. Leon Silvera
      Mr. Albert Silvera

Case 03-26565-MS    Doc 713-1    Filed 11/01/04    Entered 11/01/04 16:22:44    Desc
Memorandum Summarizing November 1    2004 Ruling of Judge Stanceu    Page 6 of 6

6