UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**ATTORNEY FEE APPLICATION COVER SHEET**

| | |
|---|---|
| IN RE: | APPLICANT: |
| Jazz Photo Corp. | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
| CASE NO.: 03-26565 (MS) | CLIENT: Jazz Photo Corp. |
| CHAPTER: 11 | CASE FILED: May 20, 2003 |

COMPLETION OF THIS FORM CONSTITUTES A CERTIFICATION
UNDER PENALTY OF PERJURY.  <u>RETENTION ORDER ATTACHED</u>.


*/s/ Michael D. Sirota*          March 23, 2005
MICHAEL D. SIROTA              Date

**SECTION I
FEE SUMMARY**

Fourth Interim Fee Application Covering the
Period June 1, 2004 through December 31, 2004

| | |
|---|---|
| Total Previous Fees and Expenses Requested: | $1,175,232.38 |
| Total Fees and Expenses Allowed to Date: | *$   885,092.63 |
| Total Retainer (if applicable): | $         0.00 |
| Total Holdback (if applicable): | N/A |
| Total Received by Applicant: | **$   888,232.11 |

---

  * This amount has been allowed pursuant to the Orders Awarding Compensation for Professionals and Reimbursement of Actual and Necessary Expenses Pursuant to 11 U.S.C. §§ 328 and 330 signed on October 15, 2003, April 6, 2004, and August 30, 2004.

  ** This amount reflects payment on account of fees and reimbursement of costs awarded in the October 15, 2003, April 6, 2004 and August 30, 2004 Interim Orders.  This amount also reflects <u>partial</u> payment, pursuant to the September 8, 2003, Order Establishing Procedures For Allowance and Payment of Interim Compensation and Reimbursement of Expenses to Professionals on account of eighty (80%) percent of fees and one hundred (100%) percent of costs requested in the Monthly Fee Statements filed on July 23, 2004, August 18, 2004, September 29, 2004, October 19, 2004, November 30, 2004, January 5, 2005, January 31, 2005 (continued…)

|    | Name of Professional and Title | Year Admitted | Hours | Rate | Fee |
|----|---|---|---|---|---|
| 1. | Michael D. Sirota, Partner | 1986 | 151.00 | *$450.00 -500.00 | $ 71,580.00 |
| 2. | Stuart Komrower, Partner | 1984 | 89.10 | *395.00 -410.00 | 36,063.00 |
| 3. | David M. Kohane, Partner | 1985 | 1.30 | 325.00 | 422.50 |
| 4. | Warren A. Usatine, Partner | 1995 | 77.20 | *330.00 -350.00 | 26,118.00 |
| 5. | Franck D. Chantayan, Associate | 2000 | 105.20 | 200.00 | 21,040.00 |
| 6. | Kristin S. Elliott, Associate | 2002 | 22.10 | 165.00 | 3,646.50 |
| 7. | Jeffrey M. Traurig, Associate | 1997 | 227.80 | *250.00 -265.00 | 58,921.00 |
| 8. | Mark J. Politan, Associate | 1999 | 0.60 | 240.00 | 144.00 |
| 9. | Frances Pisano, Paralegal | N/A | 186.90 | *135.00 -140.00 | 25,780.50 |
|    | TOTALS |  | 861.20 |  | $243,715.50 |

FEE TOTALS (Page 3)     $243,715.50
DISBURSEMENTS TOTALS (Page 4)     $ 11,698.00
TOTAL FEE APPLICATION     $255,413.50

---

(…continued)
and March 2, 2005. As a result of the filing of this Fourth Interim Fee Application, Cole Schotz is owed $231,810.06 on account of unpaid monthly Fee Statements.

   *Rates reflect change for the professional during the period covered by this fee application.

# SECTION II
# SUMMARY OF SERVICES

| Services Rendered | Hours | Fee |
|---|---|---|
| (a)  Telephone Calls | 88.50 | $ 30,401.50 |
| (b)  Correspondence Drafted | 49.20 | 12,978.50 |
| (c)  Correspondence Reviewed | 123.20 | 33,910.00 |
| (d)  Legal Research | 56.50 | 12,992.50 |
| (e)  Court Appearance | 16.10 | 6,185.50 |
| (f)  Preparation of Pleadings and Briefs | 339.40 | 98,597.00 |
| (g)  Internal Office Meetings: | | |
|     (1)  solely w/applicant's staff | 36.10 | 9,332.00 |
|     (2)  third party conferences | 1.90 | 741.50 |
| (h)  Out of Office Meetings | 7.50 | 2,105.00 |
| (i)  Review of File/Document Production Review | 73.60 | 13,483.00 |
| (j)  Travel Time | 11.70 | 4,368.50 |
| (k)  Fee Application Preparation | 11.40 | 1,706.00 |
| (l)  Prepare for Court Appearance | 32.40 | 13,127.50 |
| (m) Review Documents Produced by Adversary | 2.90 | 821.50 |
| (n)  Prepare for Depositions | 1.30 | 388.00 |
| (o)  Drafting Discovery | 4.30 | 1,139.50 |
| (p)  Other Services | 5.20 | 1,438.00 |
| SERVICES TOTALS | 861.20 | $243,715.50 |

**SECTION III**
**SUMMARY OF DISBURSEMENTS**

| Disbursements | | Amount |
|---|---|---|
| (a) Telephone | | $ 2,506.66 |
| (b) Messenger Service: | | |
|     Federal Express | 1,193.13 | |
|     Mark IV | 129.55 | 1,322.68 |
| (c) Photocopying: | | |
|     No. of Pages: 21,233;  Rate per Page:  $.20 | | 4,246.55 |
| (d) Travel (attach details - U.S. Govt. Rate) | | 135.88 |
| (e) Postage | | 75.40 |
| (f) Other (explain): | | |
|     Westlaw | 2,843.96 | |
|     Telecopier | 543.00 | |
|     Copy of Official Document | 23.87 | 3,410.83 |
| DISBURSEMENT TOTAL | | $11,698.00 |

## SECTION IV
## CASE HISTORY

(NOTE: Items (3) through (6) are not applicable to applications under 11 U.S.C. § 506)

(1) Date case filed: May 20, 2003

(2) Chapter under which case commenced: Chapter 11

(3) Date of retention: Order signed May 30, 2003, *nunc pro tunc* to May 20, 2003 (Annex copy of order(s).) **See Exhibit A**.
If limit on number of hours or other limitations to retention, set forth: N/A

(4) Summarize in brief the benefits to the estate and attach supplements as needed: See narrative portion of fee application

(5) Anticipated distribution to creditors:

    (a) Administration expense: 100%.

    (b) Secured creditors: 100%.

    (c) Priority creditors: 100%.

    (d) General unsecured creditors: Unknown at this time.

(6) Final disposition of case and percentage of dividend paid to creditors (if applicable): This is a fourth interim fee application. The Debtor has filed a plan of orderly liquidation that will provide for, among other things, the distribution of $25 million settlement proceeds realized from litigation against Imation. Final dividend percentages are unknown at this time.

MS-4088
WU-1187
**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Attorneys for Jazz Photo Corp.,
Debtor-in-Possession

|  |  |
|---|---|
| | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE MORRIS STERN<br>CASE NO. 03-26565 (MS) |
| In the Matter of:<br><br>JAZZ PHOTO CORP.,<br><br>                Debtor-in-Possession. | Chapter 11<br><br>**FOURTH INTERIM APPLICATION OF COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A. FOR COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES PURSUANT TO 11 U.S.C. §§ 328, 330 AND 331.** |

TO:    HONORABLE MORRIS STERN
       UNITED STATES BANKRUPTCY JUDGE

The Application of Cole, Schotz, Meisel, Forman & Leonard, P.A. ("Cole Schotz"),

attorneys for Jazz Photo Corp., the within debtor and debtor-in-possession (the "Debtor"), in

support of its Fourth Interim Application for Allowance of Compensation (the "Application"),

pursuant to Sections 328, 330 and 331 of Title 11, United States Code ("Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure, for professional services performed by Cole Schotz for the period commencing June 1, 2004 through and including December 31, 2004 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period, respectfully represents:

## BACKGROUND

1. On May 20, 2003 (the "Filing Date"), the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code. Since the Filing Date, the Debtor has remained in possession of its assets and, through March 1, 2005, continued in management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. On June 4, 2003, the Office of the United States Trustee formed an official committee of unsecured creditors (the "Committee"). The Committee has retained the firms of Ravin Greenberg PC as its counsel and Weiser, LLP as its accountants. Since its appointment and retention of professionals, the Committee has been involved in all aspects of the Debtor's Chapter 11 proceeding.

3. On May 30, 2003, this Court entered an Order authorizing the Debtor's retention of Cole Schotz as general bankruptcy counsel, *nunc pro tunc* to the Filing Date. A copy of the Order is attached as **Exhibit A**.

4. On September 8, 2003, this Court entered an Administrative Fee Order Establishing Procedures for Allowance and Payment of Interim Compensation and Reimbursement of Expenses to Professionals. A copy of the order is attached as **Exhibit B**.

5. Cole Schotz now submits its fourth interim application for compensation for services rendered and reimbursement of expenses incurred during the Compensation Period. The

2

following is a summary of the significant professional services rendered on the Debtor's behalf during the Compensation Period. Cole Schotz's computerized billing records, indicating with specificity the services performed during the Compensation Period, are attached as **Exhibit C**.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED

6.Cole Schotz seeks allowance of compensation for professional services rendered to the Debtor during the Compensation Period in the amount of $243,715.50. In addition, Cole Schotz seeks approval for reimbursement of expenses incurred in connection with the rendition of its services in the aggregate amount of $11,698.00. During the Compensation Period, Cole Schotz attorneys and paraprofessionals expended a total of 861.20 hours for which compensation is requested. The fees charged by Cole Schotz in this proceeding are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period.

7.Attached as **Exhibit D** is a schedule specifying the categories of expenses for which Cole Schotz is seeking reimbursement and the total amount for each such expense category. To the extent time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Cole Schotz reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

8.During the Compensation Period Cole Schotz rendered substantial professional services on behalf of the Debtor. The following is a summary of the significant professional services rendered by Cole Schotz during the Compensation Period.

### A.Case Administration.

9.This category of services involved the most time expenditure and consisted of a variety of general matters performed on the Debtor's behalf. The services included, but were not

3

limited to, review of the Debtor's monthly operating reports and budget forecasts. Cole Schotz prepared and filed on the Debtor's behalf various pleadings, including: (a) substantial responses to a multitude of motions filed by Fuji Photo Film Co., Ltd. ("Fuji") seeking to convert the Debtor's chapter 11 case, lift the automatic stay and obtain an administrative expense claim, (b) extend exclusivity, (c) quash a subpoena filed by Fuji, (d) retain Neville Peterson LLP, and (e) authorized the Debtor's use of proceeds received from the ITC.

10. In addition, Cole Schotz conducted research on various legal issues including but, not limited to issues relating to: (a) conversion under Section 1112(b) of the Bankruptcy Code; and (b) payment of administrative expenses.

### B. Fuji's Initial Motion For Relief from the Automatic Stay.

11. On May 13, 2004, Fuji filed a motion for relief from the automatic stay ("Stay Relief Motion") to permit it to go before the District Court seeking an order enjoining the Debtor from further alleged post-petition infringing activity. Fuji's sole basis for seeking stay relief was the non-binding recommendation of the Administrative Law Judge ("ALJ") to the International Trade Commission ("ITC").

12. On June 1, 2004, Cole Schotz finalized and filed an objection to Fuji's Stay Motion on the Debtor's behalf asserting that the ALJ's recommendation to the ITC was a non-binding recommendation. In addition, Cole Schotz pointed out that Fuji, on two previous occasions, had attempted to obtain, and was denied, the same relief from the District Court for which it was now seeking relief from the automatic stay. Furthermore, the issue regarding the Debtor's alleged continuing infringement of Fuji's patents was the subject of an appeal before the Federal Circuit and, therefore, the District Court lacked jurisdiction to hear the matter.

13. On June 4, 2004, the Court held a hearing on Fuji's Stay Relief Motion. At the hearing, the Court denied Fuji's Stay Relief Motion and enjoined Fuji, without prejudice, from

4

seeking an injunction from the District Court. The Court ruled that Fuji had the right to renew its motion for relief from the automatic stay based on any future change of events or circumstances. The Court's ruling was memorialized in an Order entered by the Court on June 9, 2004.

### C. Fuji's Motions for Conversion, Relief from the Automatic Stay and Payment of an Administrative Expense Claim

14. On August 2, 2004, Fuji filed three voluminous motions (collectively, the "Fuji Motions") seeking (a) to convert the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (b) relief from the automatic stay to commence an action in the District Court to enjoin further infringing activities by the Debtor, or alternatively, for a determination that the automatic stay did not prohibit Fuji from commencing such an action and (c) payment of an administrative expense claim in an estimated amount of not less than $6,546,000.

15. The Fuji Motions were filed by Fuji in an attempt to, among other things, use a partial determination of the United States International Trade Commission (the "ITC Determination") to argue that cause existed to convert the Debtor's Chapter 11 case, obtain a district court injunction that previously had been denied and assert a non-existent multi-million dollar claim. The hearing on the Fuji Motions was initially scheduled for August 23, 2004.

16. On August 6, 2004, Cole Schotz filed a letter with the Court requesting that the hearing on the Fuji Motions be adjourned and that additional time be granted to file responses.

17. On August 13, 2004, the Court rescheduled the hearing until September 22, 2004.

18. In response to the Fuji Motions, it was necessary for Cole Schotz to expend significant time preparing objections (the "Debtor's Objections") to each of the Fuji Motions. The Debtor's Objections set forth the factual background of the case and supporting case law to show that the partial ITC Determination did not create a significant change in the case that would warrant conversion and that it was made clear throughout the case that the Debtor's Chapter 11

5

case has always been about reorganizing for the benefit of the of the Debtor's creditors pending an appeal in the Federal Circuit and litigation involving Imation Corp. and Imation S.p.A.

19. Moreover, in the responses, Cole Schotz set forth the bases for denying relief for the automatic stay which would only serve to increase the Debtor's expenses and disputed Fuji's allegations that it is entitled to an estimated administrative expense claim.

20. Cole Schotz filed the Debtor's Objections on September 10, 2004.

21. In addition to preparing and filing the Debtor's Objections, Cole Schotz spent significant time preparing for the hearing on the Fuji motions, including reviewing matters related to additional allegations set forth in responses that Fuji filed on September 20, 2004.

22. On September 22, 2004, the Court conducted an extensive hearing on the foregoing matters and determined that it would adjourn the hearing until November 19, 2004. The hearing on the matters was further adjourned until January 28, 2005, at which time settlement discussions were leading to a settlement with Imation Corp. and the Debtor's agreement to cease operations and propose a liquidating plan.

### D.    Fuji's Subpoenas to Joseph Weber and the Debtor.

23. On or about August 17, 2003, Fuji served a Subpoena (the "August Subpoena") on Joseph Weber, the Debtor's corporate controller ("Weber"), seeking, among other things, <u>all</u> documents relating to among other things, disbursements to Polytech Enterprises, Inc., Photo Recycling Enterprises, and <u>all</u> accountings and reconciliations reflecting amounts paid to or on behalf of the Debtor's subsidiaries.

24. Cole Schotz assisted the Debtor in producing more than 700 pages of documents responding to the August Subpoena. Nevertheless, the Debtor believed that the document request was overly broad and was only designed to harass the Debtor and that the request for a

6

deposition was not necessary. Accordingly, notwithstanding the fact the Debtor had partially complied with the August Subpoena, Cole Schotz prepared a motion to quash the Subpoena.

25. Fuji responded and the matter was heard on September 22, 2004. At the hearing, the Court denied the Debtor's Motion to Quash, however, the Court did scale back the scope of documents requested by Fuji.

26. Two days after the Court scaled back the August Subpoena, Fuji filed an additional subpoena on the Debtor (the "September Subpoena") whereby Fuji requested additional documents relating to Jazz Photo Limited, a subsidiary of the Debtor.

27. In response to the September Subpoena and the modified August Subpoena, Cole Schotz assisted the Debtor in producing more than 2,500 pages of additional documents.

### E.  The Debtor's Motion to Extend the Exclusive Periods.

28. Prior to the Compensation Period, the Court entered an Order extending the Debtor's exclusive periods to file a plan of reorganization and to solicit acceptances thereto to September 6, 2004 and November 29, 2004, respectively.

29. On August 10, 2004, Cole Schotz filed a motion to further extend the Debtor's exclusive periods in which to file a reorganization plan and to solicit acceptances thereto.

30. Fuji filed an objection to this further request to extend exclusivity. Ultimately, after a number of bridge orders, on November 19, 2004, the Court entered an order further extending the exclusive periods to file a plan of reorganization and to solicit acceptances thereto.

### F.  Neville Peterson Retention

31. The Debtor has been involved in various matters before the United States Court of International Trade. In connection therewith, the Debtor sought to obtain Neville Peterson LLP ("Neville Peterson") as special litigation counsel.

7

32. Cole Schotz assisted the Debtor in preparing an application to retain Neville Peterson and coordinated with Neville Peterson regarding filing the necessary documents with the Court.

33. On September 21, 2004, Cole Schotz filed an application with the Court for the retention of Neville Peterson. On September 28, 2004, Fuji filed an objection to the retention. Accordingly, Cole Schotz was forced to prepare and file a reply to Fuji's objection.

34. A hearing on Neville Peterson's retention application was held on October 20, 2004, at which the Court entered an order authorizing the retention. Neville Peterson's retention was instrumental in obtaining the release of certain of the Debtor's product in the ensuing months.

### G.     Bond Proceeds

35. Prior to the filing date, the Debtor posted an $877,000 bond (the "Bond") with the United States International Trade Commission (the "ITC").

36. On August 27, 2004, the ITC ordered that Fuji was owed $412,050.85 of the Bond proceeds, but that no action would be taken in light of the automatic stay under Section 362 of the Bankruptcy Code.

37. Cole Schotz assisted the Debtor in negotiating a joint response with Fuji to the ITC for the release of the Bond Proceeds.

38. On September 13, 2004, Cole Schotz filed an application with this Court requesting that the balance of the Bond proceeds ($464,949.15) be made available to fund the Debtor's post-petition operations.

39. On September 27, 2004, Fuji filed an objection to the Debtor's application for the use of the Bond proceeds. On October 13, 2004, Cole Schotz filed a reply to Fuji's objection.

8

40. A hearing on the matter was held before this Court on October 20, 2004 and an order was entered whereby more than $335,000 was released and deposited with the law firm that was handling the Debtor's litigation in <u>Jazz v. Imation Corp.</u>, Docket No. 99-2505 (JLL) to fund anticipated expert fees and expenses. The remaining proceeds were remitted to Cole Schotz to be held in escrow pending further order of the Court.

### H.    Miscellaneous.

41. Cole Schotz professionals and paraprofessionals have kept the Debtor apprised of all developments in the Chapter 11 proceeding and counseled the Debtor regarding the fulfillment of its duties as a debtor-in-possession. In addition, Cole Schotz held meetings with the Debtor to review and discuss, among other things: (a) its monthly operating reports; (b) the Fuji motions; and (c) Fuji's discovery requests. Furthermore, Cole Schotz professionals gave status reports to the Debtor and held conferences and meetings with the Debtor regarding other significant issues.

42. Cole Schotz professionals had communications with various creditors' counsel and the Committee's counsel, as well as the Debtor's other professionals retained in this case regarding a variety of issues, including but not limited to the Fuji Motions, exclusivity, and the general administration of the Debtor's estate. These communications consisted of numerous letters, faxes, e-mails and conference calls.

43. The foregoing professional services performed by Cole Schotz are a summary only. The complete detail of all work performed is set forth on **Exhibit C**. Cole Schotz respectfully submits that its services were necessary and valuable to the Debtor and the estate and were in the estate's best interests. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed in an expeditious and efficient manner.

44.    The professional services performed by Cole Schotz on the Debtor's behalf during the Compensation Period required an aggregate expenditure of 861.20 recorded hours by Cole Schotz's partners, associates and paraprofessionals.  Of the aggregate time expended, 318.60 recorded hours were expended by partners of Cole Schotz, 355.70 recorded hours were expended by associates, and 186.90 recorded hours were expended by paraprofessionals and law clerks.

45.    During the Compensation Period, Cole Schotz's hourly billing rates for attorneys and paraprofessionals ranged from $135.00 to $500.00 per hour.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of $283.00, which represents a blended rate of $323.00 for attorneys and a blended rate of $138.00 for paraprofessionals at Cole Schotz's regular billing rates in effect at the time of the performance of services.

46.    As set forth in **Exhibit D** hereto, Cole Schotz has disbursed $11,698.00 as expenses incurred in providing professional services during the Compensation Period.  These charges are intended to cover Cole Schotz's direct operating costs, which costs are not incorporated into Cole Schotz's billing rates.

47.    Section 330 of the Bankruptcy Code provides that a court may award a professional employed under Section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered...and reimbursement for actual necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;

10

  (B) the rates charged for such services;

  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

  (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

  48. In the instant case, Cole Schotz respectfully submits that the services for which it seeks compensation in this Application were necessary to effectively represent the Debtor and the interests of the estate. Cole Schotz rendered various services in furtherance of those duties, as summarized above.

  49. Cole Schotz believes that the foregoing services were necessary and beneficial to the estate. The billing records attached as **Exhibit C** set forth the names of the professionals performing the services, the date, and the time expended for the period June 1, 2004 through December 31, 2004. The services performed total 861.20 hours, as follows:

| Name of Professional and Title | Hours | Rate | Fee |
|---|---|---|---|
| Michael D. Sirota, Partner | 151.00 | *$450.00 -500.00 | $ 71,580.00 |
| Stuart Komrower, Partner | 89.10 | *395.00 -410.00 | 36,063.00 |
| David M. Kohane, Partner | 1.30 | 325.00 | 422.50 |
| Warren A. Usatine, Partner | 77.20 | *330.00 -350.00 | 26,118.00 |
| Franck D. Chantayan, Associate | 105.20 | 200.00 | 21,040.00 |

---

  *Rates reflect change for the professional during the period covered by this fee application.

| Name of Professional and Title | Hours | Rate | Fee |
|---|---|---|---|
| Kristin S. Elliott, Associate | 22.10 | 165.00 | 3,646.50 |
| Jeffrey M. Traurig, Associate | 227.80 | *250.00 -265.00 | 58,921.00 |
| Mark J. Politan, Associate | 0.60 | 240.00 | 144.00 |
| Frances Pisano, Paralegal | 186.90 | *135.00 -140.00 | 25,780.50 |
| TOTALS | 861.20 | | $243,715.50 |

50. As set forth above, Cole Schotz requests compensation for 861.20 hours of time for legal services rendered, the total value of which is $243,715.50.

51. In addition, Cole Schotz incurred out-of-pocket disbursements in the amount of $11,698.00. These disbursements are set forth in detail on **Exhibit D** attached hereto, Cole Schotz's computer billing records.

WHEREFORE, Cole Schotz respectfully requests a fourth interim fee allowance as bankruptcy counsel for Jazz Photo Corp. in the amount of $243,715.50, together with reimbursement of expenses in the amount of $11,698.00, for a total interim fee award of $255,413.50.

> COLE, SCHOTZ, MEISEL,
> FORMAN & LEONARD, P.A.
> Attorneys for Jazz Photo Corp.,
> Debtor-in-Possession
>
> By:  */s/ Michael D. Sirota*
>         Michael D. Sirota

DATED: March 23, 2005

12