**LOWENSTEIN SANDLER PC**
MICHAEL S. ETKIN (ME 0570)
BRUCE BUECHLER (BB 0324)
S. JASON TEELE (SJT 7390)
65 Livingston Avenue
Roseland, NJ 07068
973-597-2500 phone
973-597-2400 fax

- and -

**STROOCK & STROOCK & LAVAN LLP**
LAWRENCE ROSENTHAL
KRISTOPHER M. HANSEN
180 Maiden Lane
New York, NY 10038
212-806-5400 phone
212-806-6006 fax
Attorneys for Fuji Photo Film Co., Ltd.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| JAZZ PHOTO CORP., | : | Case No. 03-26565 (MS) |
| | : | |
| | : | Hearing Date: April 18, 2005 at 2:00 p.m. |
| Debtor. | : | |
| | : | Oral Argument is Requested |

**OBJECTION OF FUJI PHOTO FILM CO., LTD. TO THE DEBTOR'S MOTION FOR AN ORDER: (1) AUTHORIZING AND APPROVING SOLICITATION AND COMPETITIVE BIDDING PROCEDURES FOR THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS; (2) SCHEDULING AUCTION AND HEARING DATE TO CONFIRM SALE; (3) APPROVING OF FORM, MANNER AND SUFFICIENCY OF NOTICE OF AUCTION AND SALE HEARING; AND (4) <u>GRANTING OTHER RELATED RELIEF</u>**

To: Honorable Morris Stern,
    United States Bankruptcy Judge:

15856/2
04/15/2005 1708282.01

Fuji Photo Film Co., Ltd. ("Fuji"), by and through its counsel, hereby submits this objection to the motion of Jazz Photo Corp. ("Jazz" or the "Debtor") for an order: (1) authorizing and approving solicitation and competitive bidding procedures for the Debtor to sell substantially all of its assets pursuant to 11 U.S.C. §363 and Fed.R.Bankr.P. 6004; (2) scheduling auction and hearing to confirm sale; (3) approving the form, manner and sufficiency of notice of auction and sale hearing; and (4) granting other related relief (the "Motion"), and respectfully represents as follows:

1.  Enough is Enough! Jazz professes to exercise its fiduciary duties in seeking to sell its remaining assets to Ribi Tech Products LLC ("Ribi Tech"), but it appears that Jazz is just continuing to do Jack C. Benun's ("Benun") bidding. Ribi Tech apparently was formed to acquire substantially all of Jazz' remaining assets and jump back into the business of importing and selling infringing single use cameras. Indeed, Ribi Tech is owned by Benun's wife and four children, and Benun serves as Ribi Tech's chief executive officer and manager. Motion at paragraph 18. To put it bluntly, Jazz' effort to sell to Ribi Tech is an outrage. Clearly, this is just a mere subterfuge to catapult Ribi Tech into the business of the importation and sale of single use cameras that will continue Benun's unabashed and notorious infringement of Fuji's patent rights. Equally outrageous, Ribi Tech, a successor to Jazz in every traditional sense (ownership, assets and management are all the same), is given immunity from successor liability and therefore released of the obligations and risks imposed under the International Trade Commission's ("Commission" or "ITC") Cease and Desist Order which otherwise applies to successors. Jazz seeks to assist this by requesting the entry of an order of the Court authorizing a sale free and clear of all liens, claims and encumbrances that may limit Fuji's ability to prosecute future infringement claims against Benun, Ribi Tech and potentially others, and certainly will affect the ability of the Commission to enforce its Orders.

2. As the Court is all too familiar, Jazz was formed by Benun in 1995 primarily to import, distribute and sell single use cameras in the United States. Rulings by various courts and administrative bodies have determined that Jazz, at the control, direction and behest of Benun, have consistently and intentionally infringed on Fuji's patents from Jazz's formation in 1995 through October 2004. Fuji respectfully submits that Jazz, at the direction of Benun, has continued to infringe on Fuji's patents through March 1, 2005 when this Court directed that Jazz cease operating. See, e.g., Jazz Photo Corporation v. International Trade Commission, 264 F. 3d 1094 (Fed. Cir. 2001); the District Court's decision in Fuji Photo Film, Co., Ltd. v. Jazz Photo Corp., 249 F.Supp.2d 434, (D.N.J. 2003), aff'd, 394 F.3d 1368 (Fed. Cir. 2005); the Administrative Law Judge's decision in the International Trade Commission ("ITC") in In re Certain Lens Fitted Film Packages, Inv. No. 337-TA-406, Enforcement Proceedings (II), entered on April 6, 2004, which decision was adopted by the ITC by orders and opinions dated July 27, 2004 and January 14, 2005, which, among other things, imposed a civil penalty jointly and severally against Jazz and Benun in the amount of $13,675,000 for infringement of Fuji's patents from August 21, 2001 through December 12, 2003; and the decision of the United States Court of International Trade ("CIT"), issued on November 17, 2004, which excluded about 23% of the cameras at issue there.

3. Obviously realizing that Jazz would no longer be permitted by the Court to remain in business indefinitely, Benun, with the likely assistance of the law firm of Greenberg and Kahr (which was retained as special corporate counsel to Jazz pursuant to an order of the Court dated June 16, 2003), formed Ribi Tech on February 18, 2005, prior to Benun and Greenberg & Kahr resigning their respective relationships with Jazz. See, Ribi Tech Certificate of Formation filed with the New Jersey State Treasurer on February 18, 2005, a copy of which is annexed hereto as Exhibit A.

4. Pursuant to the motion, Ribi Tech seeks to buy all remaining physical assets of the Jazz estate, including, inter alia, Jazz's inventory of both single use cameras and non-single use cameras, computer and office equipment, and all of the Debtor's trademark registrations and

pending trademark applications (both domestic and foreign), so that Ribi Tech has all of the essential elements it needs to conduct its business.  Further, Jazz proposes to sell to Ribi Tech all of its books and records, whether stored on computer or hard copy, with the "hope" that those records will be safeguarded under Benun's direction, so that the Debtor, the liquidating trustee under the proposed plan of liquidation and creditors (such as Fuji) can have access to them.  Fuji respectfully submits that the preservation of these records by Benun/Ribi Tech would be highly circumspect and that harm will probably befall the records even if a Court Order directed the books and records be maintained.

5. The Debtor further states that the proposed purchase price, $887,750, is the best offer they have received. However, Jazz has engaged in no marketing to date and fails to highlight the potential (and real life) price reductions of $286,804 and $15,000 attributable to the AGFA film and Bell and Howell license issues, respectively.  <u>See</u>, Asset Purchase Agreement ("<u>APA</u>") at section 4.5.  Thus, in reality, the purchase price will not be $887,750, but more likely $585,946.

6. There also are two containers of non-single use cameras that have been detained by Customs that are subject to the sale.  The contents of those two containers have not been disclosed by Jazz.  Thus, no third party bidder could make an informed offer when the Debtor has not disclosed all of the items offered for sale (but Benun clearly can because one can be assured that he has knowledge of the inventory in those containers).  Additionally, the Court cannot determine if the purchase price is for fair value if the contents of these containers remain secret to parties other then Benun.

7. In addition, the importation of two containers of non-single use cameras not already designated for sale to a specific customer is outside of Jazz's normal business operations.  Fuji is concerned that Jazz imported this inventory knowing it would not be able to sell it in the ordinary course of business, but rather to sell it in bulk to Benun's new entity, Ribi Tech, at a substantial discount.

8. Likewise, Fuji questions why Jazz continued to import three containers of single use cameras in February 2005 knowing that Customs would detain them. The fact that approximately 506,000 of the detained single use cameras worth approximately $276,000 are subject to AGFA's bills of lading is again highly unusual. Motion at paragraph 47. As far as Fuji is aware, Polytech has always paid AGFA for film, or the Debtor has reported that direct payments to AGFA were in behalf of Polytech and that the Debtor could not tell this Court how many rolls of film were represented by such payments. Once again, Fuji suspects these cameras were intentionally imported to sell them to Ribi Tech at a discount. What better way for Benun to pick up where he left off then to pay 60 cents per camera for inventory that was charged to the Jazz estate at $1.70 per camera? The highest and best use of this inventory would be to return to it Polytech for a full value credit and reduce Polytech's alleged administrative claim by a like amount plus the cost of storing the goods. The proposed sale to Ribi Tech will not maximize the value of the single use cameras to the Debtor's estate (noting that Fuji submits no sale of assets to Ribi Tech can be permitted for the reasons set forth herein).

9. Fuji respectfully submits that based on Benun's track record to date in the business of the importation, distribution and sale of infringing single use cameras, the Court must reject any sale to an entity controlled by Benun when the likely result is the continued sale of infringing and unlawful single use cameras. Fuji respectfully submits that the Court would never permit the sale of assets by a debtor that was engaged in an unlawful business even if the sale resulted in positive cash for the estate. The same result should apply to this sale because Jazz is selling unlawful single use cameras to Ribi Tech. Clearly, most of the detained cameras are subject to pending actions before the CIT and have not yet been found to infringe, but the Government is provided with a rebuttable presumption that the cameras should be excluded until overcome by the movant. In addition, the Jazz cameras have repeatedly been found to infringe Fuji's patents and are subject of the ITC's Cease and Desist Order, so that selling these cameras to any party who seeks to resell them in the US or elsewhere in an infringing manner is unacceptable and cannot be approved by the Court.

10. In addition, the proposed sale order with its "free and clear" effect is a thinly veiled attempt to absolve Benun from the risk of alter ego, successor liability, or similar type claims that may be brought by Fuji and other creditors and to prevent the creditors of Jazz from pursuing assets purchased by Ribi Tech pursuant to a Court order. Given the identity of the proposed bidder, Fuji respectfully submits that the Court should not approve any bidding procedures at this point in time as the proposed sale could never meet the standards articulated by the United States Court of Appeals for the Third Circuit in In Re Abbotts Dairies of Pennsylvania, Inc., 788 F. 2d 143 (3rd Cir. 1986), and 11 U.S.C. §363(m). The Third Circuit in Abbotts Dairies requires the Bankruptcy Court determine that the purchaser of the debtor's assets is a good faith purchaser. The Third Circuit construed the "good faith buyer" standard to mean one who purchases the assets "in good faith" and for "value". Id. at 147.

11. The facts of the Third Circuit's decision in Abbotts Dairies, while generally overlooked, are particularly instructive. The Bankruptcy Court, after limited notice, approved of the sale of substantially all of the debtor's assets. The Third Circuit first determined that while no stay was sought, because the sale was not in good faith as defined in Bankruptcy Code §363(m), the order approving the sale was not moot. Accordingly, the Third Circuit reversed and remanded with instructions.

12. While Jazz discloses the relationships between Benun, his wife and his children with Jazz and Ribi Tech, that does not mean that the proposed buyer (Ribi Tech) is a buyer in "good faith" or is paying fair value. Good faith speaks to the sale process and whether there is fraud, collusion or "an attempt to take grossly unfair advantage of other bidders." Id. at 147. Factual findings of good faith are required and would be impossible to produce in this instance. Here, Benun seeks to take advantage of the Court, and the creditors of the Jazz estate. Id. at 148.

13. In addition, there is no proof or showing that fair value is being paid. There is no appraisal or statement of the cost of the items to be sold, and there have been no sale efforts made by Jazz to date. The fact that an "auction" is proposed to be conducted does not necessarily equate with the establishment of fair value.

14. Where, as here, a debtor proposes to sell assets to an insider, the sale is subject to a higher level of scrutiny by the Court. See In re W.A. Mallory Co., Inc., 214 B.R. 834, 837 (Bankr. E.D. Va. 1997). In that case, the debtor proposed to sell assets to the debtor's president's sisters. Recognizing the potential for abuse, the Mallory court was concerned with "whether the sales are truly at arm's length or an attempt by the debtor to abuse the bankruptcy process to discharge unwanted debt." Id. Ultimately, the court was not convinced that the sale was on the level and refused to approve it. Fuji submits that the circumstances of this case are analogous to the facts of the Mallory case inasmuch as the Debtor is seeking to sell assets to its principal (Benun) and his family.

15. Under any standard of scrutiny, much less the high level of scrutiny attendant to sales to insiders, the proposed sale of Jazz's assets to Ribi Tech, Jazz can never satisfy its burden of showing the sale is in good faith. Thus, because the sale can never be approved, it would be a waste of estate and judicial resources to approve the bidding procedures. By way of analogy, the Third Circuit has ruled that if a plan of reorganization is unconfirmable, then the court should not approve of the adequacy of a disclosure statement because the plan process would be an exercise in futility. In Re Route 37 Business Park Associates, 987 F. 2d 154 (3rd Cir. 1993). For the same rationale, the Court should not authorize bid procedures when any sale to Ribi Tech cannot be approved under Bankruptcy Code §363 and the Third Circuit's decision in Abbotts Dairies.

16. In addition to the general points raised above, Fuji has the following specific objections to the proposed bidding procedures:[1]

    A. Paragraph 27(a) of the Motion does not direct Jazz to provide notice of the proposed sale to the Commission, the CIT or the Office of the United States Attorney, but solely counsel to Customs. This is inadequate, especially since the sale contemplates the assignment of Jazz's rights before CIT to Ribi Tech and Ribi Tech's attempts to import the Jazz inventory for sale in the US is contrary to the Commission's Cease and Desist Order.

---

[1] Fuji reserves all of its rights and objections to any proposed sale in the event that the Court approves of the bidding procedures.

B. Paragraph 27(a) of the Motion also proposes that the Debtor will advertise notice of the proposed sale in The Newark Star Ledger. This notice is a waste of money and is not reasonably calculated to locate potential buyers. Rather, the Debtor should advertise the sale, if the Court permits the sale process to move forward, in trade journals in both the United States and Hong Kong and send direct notices to potential domestic and foreign entities in similar businesses. Further, Fuji has previously suggested to the Debtor's counsel they notice the sale to the foreign respondents to the various proceedings before the Commission.

C. The bid procedures should expressly permit creditors such as Fuji to credit bid their claims, whether administrative or unsecured claims. While Fuji concedes that Bankruptcy Code §363(k) allows only a secured creditor the right to credit bid, counsel for Jazz and the Official Committee of Unsecured Creditors (the "Committee") have stated that they would permit Fuji to credit bid its claim. Fuji is negotiating this with counsel for Jazz and the Committee. The bidding procedures should permit Fuji to credit bid its claims given that the sums realized from the settlement of the Imation litigation, namely $25,000,000, will result in Fuji's administrative and/or unsecured claims (of which the about $30 million unsecured claim based on the District Court judgment is allowed) receiving a dividend.

D. Paragraph 27(h) of the Motion and the corresponding provision of the proposed form of order would preclude Fuji and other creditors and parties-in-interest from attending the auction sale if they are not a qualified bidder. This is unacceptable. The auction sale is a public proceeding to which any party should be able to attend. In addition, Fuji, the primary beneficiary on an increased estate asset base and the primary victim as the holder of the patents which the Jazz inventory infringes, requests that the Court direct that the Debtor be required to provide Fuji with a copy of any bids received by it pursuant to the auction sale process.

E. Paragraph 28 of the Motion permits Jazz, after consultation with the Committee, "in its <u>sole</u> discretion" [emphasis added] to disqualify any bidder from the Auction.…" This must be modified to simply state that Jazz can recommend to the Court that an

otherwise qualified bidder should be disqualified from the auction process. Jazz should not be permitted the sole discretion without any Court oversight at the auction to decide who can and cannot bid, to the obvious advantage of Jazz's former controlling party Benun and his new entity Ribi Tech.

        F.    Paragraph 25(e) of the Motion and section 2.3 of the APA specifically state that the Debtor's claims in the CIT shall be assigned to Ribi Tech and the Debtor proposes a separate form of order in addition to the proposed sale order to effectuate this. Jazz has failed to demonstrate any legal basis to permit it to assign litigation claims and rights in the CIT and there is no reason for there to be a separate form of order except to make any potential appeal arising from the sale more difficult by having a multiplicity of orders. See Objection filed by the Department of Justice.

        G.    As noted above, Ribi Tech is nominally owned by Mona Benun (Benun's wife) and Benun's children. A sworn statement must be submitted to the Court demonstrating the source of the purchase price monies, as serious issues concerning potential fraudulent transfers and preferences from the Jazz estate to Benun and Benun's individual chapter 7 proceeding have been raised.

        H.    The proposed single use cameras to be sold to Ribi Tech are evidence necessary to Fuji and the US Government that Jazz continues to infringe Fuji's patents. Fuji respectfully submits that it is crucial, before allowing these cameras to be sold, to permit Fuji and the US Government to sample the single use cameras being detained by Customs so it can be determined if Jazz is continuing to infringe on Fuji's patents.

        I.    Also, the proposed sale of computers and books and records and entrusting them to Benun for safekeeping is unacceptable since such computers and paper, books and records may include critical evidence relevant to the claims vetting process, further proceedings in this Court that might be brought by the Liquidating Trustee and to further proceedings in the CIT and/or Commission involving the inventory.

**WHEREFORE**, Fuji respectfully requests that the Court deny the Motion of Jazz seeking to establish bidding procedures to sell substantially all of its remaining assets to Ribi Tech, and grant such other and further relief as is just and equitable.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: *s/ Bruce Buechler*
Michael Etkin, Esq.
Bruce Buechler, Esq.
S. Jason Teele, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.597.2500
Facsimile: 973.597.2400

-and-

**Stroock & Stroock & Lavan LLP**
Lawrence Rosenthal, Esq.
Kristopher M. Hansen, Esq.
Douglas H. Mannal, Esq.
180 Maiden Lane
New York, NY 10038
Telephone: 212.806.5400
Facsimile: 212.806.6006

Co-Counsel for Fuji Photo Film Co., Ltd.

Dated: April 15, 2005