**MS-4088**
**WU-1187**
**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P. O. Box 800
Hackensack, New Jersey  07602-0800
(201) 489-3000
(201) 489-1536  Facsimile
Attorneys for Jazz Photo Corp.
Debtor-in-Possession

|  |  |
|---|---|
| | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE MORRIS STERN<br>CASE NO. 03-26565 (MS) |
| In the Matter of: :<br>:<br>JAZZ PHOTO CORP.,   :<br>:<br>       Debtor.  : | Chapter 11<br><br>**SUPPLEMENTAL SUBMISSION IN SUPPORT OF THE DEBTOR'S MOTION FOR AN ORDER AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL ITS ASSETS TO RIBI TECH PRODUCT, LLC, FREE AND CLEAR OF LIENS, ENCUMBRANCES AND SECURITY INTERESTS THEREON PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 6004**<br><br>**HEARING DATE AND TIME:**<br>May 16, 2005, at 2:00 p.m.<br><br>**ORAL ARGUMENT REQUESTED** |

Jazz Photo Corp. (the "Debtor"), by and through its undersigned counsel, hereby supplements its previous submission to this Court in support of the Debtor's motion for an Order authorizing the Debtor to sell substantially all of its assets, and respectfully represents as follows:

## I.    BACKGROUND

1.    On May 20, 2003 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11, the United States Code (the "Bankruptcy Code"). Since the Filing Date, the Debtor has remained in possession of its assets and, through March 1, 2005, continued in the management of its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    Until it ceased ordinary course business operations effective March 1, 2005, the Debtor was engaged in the design, development, importation and wholesale distribution of cameras and other photographic products, primarily in the United States. The cameras the Debtor imported and distributed included traditional hard-body 35mm cameras, both point-and-shoot and zoom-lens cameras, digital cameras and disposable cameras that were refurbished by the Debtor.

3.    On March 21, 2005, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed a Joint Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to support a Joint Plan of Orderly Liquidation filed on that same date. On April 11, 2005, the Debtor and the Committee filed a First Amended Disclosure Statement (the "Disclosure Statement") and First Amended Joint Plan of Orderly Liquidation (the "Plan"). On April 11, 2005, this Court entered an Order, *inter alia*, approving the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code.

4.    On April 5, 2005, the Debtor filed an application (the "Application") in support of its motion for an Order: (a) authorizing the Debtor to solicit bids for the sale of substantially all

2

its assets (the "Assets"); (b) approving competitive bidding procedures related thereto; (c) scheduling (i) an auction with respect to the sale of the Assets the ("Auction") and (ii) a hearing date to approve the sale (the "Sale Hearing"); (d) approving the form, manner and sufficiency of notice of the Auction and the Sale Hearing; (e) approving the Debtor's sale of the Assets to Ribi Tech Products LLC ("Ribi"), or a qualified bidder submitting a higher or better offer, free and clear of liens, encumbrances and security interests, pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 6004; and (f) granting other related relief (the relief requested in sections (a) through (d) and (f) of this paragraph are referred to as "Part I of the Motion" and the relief requested in paragraph (e) of this paragraph is referred to as "Part II of the Motion").

5. On April 18, 2005, this Court conducted a hearing on Part I of the Motion. On April 22, 2004, this Court entered an Order (the "Sale Procedures Order") that, among other things, established procedures for the Debtor to notice the sale and to solicit higher and better offers for the Assets.

6. On May 13, 2005, this Court entered an Order confirming the Plan. Pursuant to the Plan, all estate assets will be transferred to a Liquidating Trust that will be administered by a Liquidating Trustee for the benefit of creditors.

## II.    UPDATE ON SALE PROCESS

**A.    Noticing and Solicitation**

7. Pursuant to the Sale Procedures Order, the Debtor was required to serve, within two business days of entry of that Order, notice of the bidding procedures, Auction and Sale Hearing, on: (a) the Office of the United States Trustee for the District of New Jersey, (b) counsel for Fuji Photo Film Co., Ltd. ("Fuji"), (c) the Debtor's secured creditors, (d) counsel for the Committee, (e) the Internal Revenue Service, (f) New Jersey Division of Taxation, (g) counsel for the United States Customs Service ("Customs"), (h) the Court of International Trade,

3

(i) counsel for the United States International Trade Commission, (j) the Office of the United States Attorney, (k) all parties that filed and served a Notice of Appearance, and (l) all parties who expressed an interest in purchasing the Assets within the three (3) months preceding entry of the Sale Procedures Order and other entities the Debtor believed were interested in purchasing the Assets.  In addition, the Debtor was required to serve notice of the bidding procedures, Auction and Sale Hearing to each of the Debtor's known creditors.  The Debtor also was required to publish notice of the sale in the *Photo Industry Reporter* at least one time before the May 9, 2005 bid deadline.  The Debtor also consulted with Fuji and received the names and addresses of entities that Fuji believed might be interested in purchasing the Assets. [1]

8.    The Debtor has complied with the noticing requirements of the Sale Procedures Order.  Indeed, to maximize the time within which creditors and potential bidders would have to submit a competing bid or object to the sale, the Debtor served notice of the sale on April 22, 2005 -- the same day the Sale Procedures Order was entered.[2]  The affidavit of mailing evidencing the April 22, 2005 service was filed with the Court on May 10, 2005 (Docket No. 1026).  To the extent that Fuji provided names and addresses of potential purchasers, the Debtor included such parties with its service.

9.    In addition, in accordance with the Sale Procedures Order, the Debtor caused notice of the sale to be published in the April 25, 2005 edition of the *Photo Industry Reporter*.  A

---

[1] Notably, as of mid-March 2005, Fuji was only aware of two entities that would be interested in purchasing the inventory for "scrap."  After the Debtor filed the Application in support of the sale, Fuji produced additional names of potential purchasers.

[2] From time to time after April 22, 2005, the Debtor became aware of additional parties that may assert liens on certain of the Assets being held and thereafter served copies of the Sales Procedure Order and Application on such entities.

4

certification of publication in that regard was filed with the Court on May 9, 2005 (Docket No. 1024).

**B.    Fuji Credit Bid**

10.    On April 15, 2005, Fuji filed an objection to Part I of the Motion and asserted, among other things, the requested procedures would preclude Fuji from credit bidding at the Auction.  At the hearing on Part I of the Motion, Fuji's ability to credit bid was raised and the Court invited Fuji and the Debtor to reach an agreement to allow Fuji to credit bid its alleged administrative expense claim and distributions from its unsecured claim, approximately $30 million of which is undisputed.

11.    The Debtor welcomed the opportunity to discuss credit bidding and hoped that an agreement could be reached so that Fuji would bid and increase the value the estate would realize for the Assets.  After extended discussions with Fuji during the weeks after the hearing on Part I of the Motion, the Debtor agreed to credit bidding procedures with Fuji and prepared and obtained signatures on a stipulation among itself, Fuji and the Committee.  On Friday, May 6, 2005 -- three days before the bid deadline and just before the Debtor's counsel was going to file that stipulation on the Court's docket -- Fuji informed the Debtor that it would not be bidding on the Assets and that the Debtor need not file the credit bidding procedures stipulation.

**C.    No Additional Bids**

12.    Under the Sale Procedures Order, any party interested in purchasing all or a portion of the Assets was provided the opportunity to submit written bids to the Debtor.  Bids were to be submitted on or before May 9, 2005.  If any qualified bids were received before the bid deadline, the Debtor would conduct the Auction on May 12, 2005.

13.    After mailing notice of the sale and having a notice published in the *Photo Industry Reporter*, the Debtor and its counsel received calls from at least six (6) entities -- other

than Fuji -- that expressed an interest in purchasing all or a portion of the Assets. The Debtor timely provided those parties with all information they requested and offered to provide additional information, if desired. In addition, after the hearing on Part I of the Motion, Fuji requested and received a substantial amount of information relating to the Assets.

14. Notwithstanding the Debtor's hope that a higher or better bid would be received, no entity submitted a competing bid. Accordingly, the Auction was not necessary to determine that the Asset Purchase Agreement with Ribi (the "APA") represented the highest and best offer for the Assets.

**D.    Agfa/Polytech**

15. During its Chapter 11 proceeding, the Debtor purchased single use cameras from Polytech Enterprise Limited ("Polytech"). The film Polytech used in manufacturing those cameras was purchased from Agfa Hong Kong Photo Limited ("Agfa"). The Debtor typically paid Agfa directly on account of Polytech's obligations to Agfa, thereby reducing the Debtor's direct obligations to Polytech . The Debtor did not, however, have a direct relationship or privity with Agfa in connection with the purchase of film for use in the single use cameras manufactured by Polytech.

16. As set forth in the Application, Polytech delivered and Agfa now holds bills of lading relating to approximately 506,000 single use cameras detained by Customs (the "Agfa Cameras") that are among the Assets covered by the APA. The particular bills of lading that Agfa holds may be negotiable and, therefore, Agfa may claim title to the Agfa Cameras.[3] At the time the APA was negotiated, the Debtor recognized that Agfa asserted interests in the Agfa

---

[3] The Debtor understands that the bills of lading initially were provided to Agfa as security for Polytech's obligations and that, after the Debtor paid Polytech, Polytech would pay Agfa. In turn, Agfa would release the bills of lading to Polytech for delivery to the Debtor.

6

Cameras (albeit disputed by the Debtor) resulting in its possession of those bills of lading. Accordingly, the APA was drafted to provide that if the Debtor could not deliver title to the Agfa Cameras, Ribi would be entitled to a downward adjustment of the purchase price but still be obligated to acquire the balance of the assets.

17. After analyzing the issues concerning Agfa's alleged interest in the Agfa Cameras with counsel to the Committee and proposed Liquidating Trustee, the Debtor determined that, based on a full reservation of rights to contest any and all claims of Agfa and Polytech, the Debtor should consummate the sale of the Agfa Cameras to Ribi and realize the $887,750 sale proceeds. If the Agfa Cameras are not sold, the purchase price from Ribi will be reduced by $286,804 and, presumably, Polytech and Agfa would continue to assert administrative expense claims (under a breach of contract theory) relating to the Debtor's ordering of the Agfa Cameras.

18. Rather than litigate the Agfa and Polytech disputes at this time when Ribi is ready, willing and able to close, the Debtor, Agfa and Polytech have agreed to escrow $276,000 (the amount Agfa claims as an administrative expense) with a full reservation of rights among the parties as to the merits of the administrative claims and the estate's objections thereto. The Debtor believes that is the most efficient and economical manner in which to address the Agfa Cameras and the Agfa and Polytech claims without risking losing the opportunity to realize value for the sale of the Agfa Cameras.

E. **Ribi's Ability to Close**

19. At the hearing on Part I of the Motion, Fuji raised the issue as to how Ribi would fund the purchase of the Assets. At that hearing, the Debtor's counsel represented that it understood Rosenthal & Rosenthal Inc. ("Rosenthal") had extended credit to Ribi. Attached as **Exhibit A** is a letter dated May 5, 2005, which the Debtor's counsel received from the Rosenthal stating that Rosenthal stands ready to advance funds to Ribi to acquire the Assets.

20. The Debtor is not aware of any facts that would prevent Ribi from closing and has had discussions with Ribi to finalize the necessary documentation and wire transfer information to close the sale.

### III.  CONCLUSION

21. For the reasons stated above and in the Application, the Debtor respectfully requests that the Court grant Part II of the Motion authorizing the sale of the Assets to Ribi and such other relief as the Court deems proper.

        Respectfully submitted,

        COLE, SCHOTZ, MEISEL,
        FORMAN & LEONARD, P.A.
        Attorneys for Jazz Photo Corp.,
        Debtor-in-Possession

        By: */s/ Michael D. Sirota*
            Michael D. Sirota
            Warren A. Usatine

DATED:  May 13, 2005

40654/0001-2196307v4