**WILENTZ, GOLDMAN & SPITZER**
A Professional Corporation
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000
**DEIRDRE WOULFE PACHECO, ESQ.** (DP-6171)
Counsel for the Defendants
Mona Benun, Rebecca Benun, Sabrina Benun
and Jasmine Benun

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

(Honorable Morris Stern)

**In re:**

**JAZZ PHOTO CORP.,**

      **Debtor.**

Chapter 11

Case No. 03-26565 (MS)

**BRIAN MOORE, LIQUIDATING TRUSTEE OF JAZZ PHOTO CORP.,**

      **Plaintiff,**

v.

**MONA BENUN, JASMINE BENUN, REBECCA BENUN, and SABRINA BENUN**,

      **Defendants.**

Adv. Pro. No. 05-01846 (MS)

## MOTION TO ENFORCE SETTLEMENT

Mona Benun, Jasmine Benun, Rebecca Benun, and Sabrina Benun, the defendants in the above-captioned adversary proceeding (the "Defendants") and Jack C. Benun, a party-in-interest in the above-captioned chapter 7 debtor's case ("Benun," collectively with the Defendants, the "Movants"), by and through Defendants' counsel, Wilentz, Goldman & Spitzer, P.A. and Benun's counsel, Riker, Danzig, Scherer, Hyland & Perretti LLP, respectfully move for entry of an Order Enforcing the Settlement between and among the Movants and the Liquidating Trustee

#3028262 (114526.003)

of Jazz Photo Corp. (the "Jazz Liquidating Trustee," and together with the Movants, the "Parties") and in support thereof states as follows:

### Background

1. As set forth more fully in the accompanying certifications of Jack C. Benun, Joseph L. Schwartz, Esq., and Deirdre Woulfe Pacheco, Esq., at the end of 2006 the Jazz Liquidating Trustee agreed to a settlement with the Defendants with respect to the above-captioned adversary proceeding, pursuant to which the Defendants agreed to pay the Jazz Liquidating Trustee the sum of $90,000.00.

2. A dispute, however, arose between the Defendants and Benun on the one hand and the Jazz Liquidating Trustee on the other as a result of the Jazz Liquidating Trustee's failure to make certain documents of Jazz Photo Corp. ("Jazz" or the "Debtor") available to RibiTech Products, LLC n/k/a Jazz Products, LLC ("RibiTech"), whose members are the Defendants, pursuant to this Court's May 16, 2005 § 363 order in the main case.

3. After months and months had passed without any response from the Jazz Liquidating Trustee to numerous requests for the information, the Defendants and Benun learned that Mr. Brian Moore, the Jazz Liquidating Trustee, was first gravely ill, and then deceased, most likely the reason why they never received responses to their requests for RibiTech access to information pursuant to Paragraph 14 of the main case Order approving sale, entered May 16, 2005.

4. In or about late 2007, negotiations resumed between counsel for Benun, counsel for the Defendants, and Chad Friedman, Esq., on behalf of the Jazz Liquidating Trustee.

5. Continued discussions between the Parties resulted in a new settlement in or about late November/early December 2007 (the "New Settlement").

6. The New Settlement was similar to the original settlement between and among the Jazz Liquidating Trustee and the Defendants in that it contemplated a payment by the Defendants

#3028262 (114526.003)

to the Jazz Liquidating Trustee in the amount of $90,000, but modified and expanded the original settlement to include, *inter alia*, full and final mutual releases in favor of the Jazz Liquidating Trustee and the Jazz estate by the Defendants, Mr. Benun and RibiTech --- which releases were not included in the original late 2006 settlement – but imposed a new payment deadline of December 17, 2007, which was met.

7.  Then, in email correspondence counsel to the Jazz Liquidating Trustee advised that, notwithstanding the Jazz Liquidating Trustee's and all other parties' previous acceptance of all the terms of the New Settlement, the Jazz Liquidating Trustee would refuse to *process* the New Settlement with the Court unless Fuji Photo Film Co., Ltd. ("FPFC") also agreed to the New Settlement.

8.  Shortly thereafter, counsel to the Jazz Liquidating Trustee advised counsel to Benun and the Defendants that as FPFC would not agree to the New Settlement the Jazz Liquidating Trustee would indeed refuse to submit the New Settlement to the Court for Fed.R.Bankr.Pro. 9019 approval. All subsequent attempts to convince counsel to the Jazz Liquidating Trustee to so process the New Settlement have failed.

9.  This motion is filed in the above-captioned adversary proceeding and in the above-captioned main case.

## LEGAL ARGUMENT

10. New Jersey courts have recognized that "[s]ettlement of litigation ranks high in our public policy." *Puder v. Buechel,* 184 N.J. 428, 437-38 (2003); *Jannarone v. W.T. Co.*, 65 N.J. Super. 472 (App. Div. 1961). Moreover, "[i]t is well established in New Jersey that an agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties." *United States v. Lightman*, 988 F.Supp. 448, 459 (D.N.J. 1997).

11. New Jersey has a "longstanding policy that encourages settlements . . . ." Ziegelheim v. Apollo, 128 N.J. 250, 263 (1992). In New Jersey, "[s]ettlement of litigation ranks

#3028262 (114526.003)

high in our public policy." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (internal citation omitted); see also Columbia Presbyterian Anesthesiology v. Brock, 379 N.J. Super. 11, 16 (App. Div. 2005) (stating "public policy strongly favors the settlement of litigation, . . . ."); accord Jennings v. Reed, 381 N.J. Super. 217, 226 (App. Div. 2005). In Department of the Public Advocate v. New Jersey Board of Public Utilities, Judge (now Justice) Long explained the rationale for the policy favoring settlement of litigation:

> The beginning point of this analysis is the strong public policy in this state in favor of settlements. The point of this policy is not the salutary effect of settlements on our overtaxed judicial and administrative calendars (although this is an undeniable benefit) but the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of a settlement whenever possible. It follows that any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced.

206 N.J. Super. 523, 528 (App. Div. 1985) (internal citation omitted).

"A settlement agreement between parties to a lawsuit is a contract." Nolan, 120 N.J. at 472. Accordingly, "New Jersey's basic contract principles of law apply." Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 349 (D.N.J. 1996). Under basic principles of contract law, "a contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). "Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Ibid. Based upon the foregoing principles, an oral settlement agreement is fully enforceable where there has been "'a meeting of the minds of the contracting parties.'" Excelsior Ins. Co., 975 F. Supp. at 350 (quoting DeVries v. Evening Journal Ass'n, 9 N.J. 117, 119-120 (1952)).

#3028262 (114526.003)

An oral agreement to settle a lawsuit is an enforceable contract despite the fact that it has neither been reduced to a writing nor approved by the court. Pascarella v. Bruck, 190 N.J. Super. 118, 124-126 (App. Div. 1983); see also LaHue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) (stating "[w]here the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges."); De Caro v. De Caro, 13 N.J. 36, 43 (1953) (noting "there was no legal requirement that [the parties] obtain formal court approval before executing their settlement agreement . . . ."); Cooper-Jarrett, Inc. v. Central-Transport, Inc., 726 F.2d 93, 96 (3d Cir. 1984) (finding "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the Court, and even in absence of a writing." (internal quotation marks omitted)); United States v. Lightman, 988 F. Supp. 448, 459 (D.N.J. 1997) (noting "it is well-established in New Jersey that an agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in absence of a writing.").

Here, it is clear the Movants and the Plaintiff entered into a valid and enforceable New Settlement agreement. As the case law discussed above amply demonstrates, there is no requirement that a settlement agreement be reduced to a signed writing in order to be a valid and binding contract.

12.     There is no doubt that the Jazz Liquidating Trustee is bound by the terms of the New Settlement with Benun and the Defendants as evidenced by the emails by and between counsel to the Parties negotiating and confirming agreement to the terms of the New Settlement. There is also no doubt as to what the terms of the New Settlement are – as the terms are clearly and unambiguously set forth in the various emails by and between counsel to the Parties as well

as the draft of the New Settlement that was prepared and circulated by counsel to the Jazz Liquidating Trustee to the Parties, all of whom agreed to same.

13. Additionally, settlements are particularly favored in bankruptcy matters where, typically by definition, there will not be "enough to go around."

14. The ultimate test for approval of a settlement is whether it is in the best interests of the estate, and its creditors, overall. The Court may look to the probability of success in the litigation, the anticipated difficulties in collection, the complexity of the dispute, and the expense, inconvenience and delay entailed. In re Martin, 91F.3d 389 (3rd Cir. 1996).

15. Here, complexity factors in with respect to the administrations of two bankruptcy cases and attendant adversary proceedings. Here, expense, inconvenience and delay for all parties are a factor, with the results of a litigated outcome uncertain for any party after such delay, expense and annoyance. The absurd factor in this situation is the 800 lb. gorilla's success in other litigation essentially puts it in the position of robbing Peter to pay Paul, when both Peter and Paul are obligated to it. Simply put, FPFC cannot get more blood out of one stone than the one stone has; any 'extra' money it could ever possibly get out of Defendants from Benun's successful operation of RibiTech is money Benun will not have in hand when FPFC comes to him hat in hand under its new non-dischargeability judgment. Any degree of litigation FPFC wants to compel the Jazz Litigating Trustee to engage in (at the expense of FPFC and its relatively minor co-creditors) will not create more income from the Defendants' and Benun's source of funds, RibiTech's operations. Nor will further litigation undo the onset of the credit crisis that held up resolution of the Home Sale Proceedings and closing thereunder in September of 2007.

16. Here, the Liquidating Trustee's initial business judgment instincts were correct: the New Settlement resolves multiple issues for multiple parties in multiple actions and ties up any and all loose ends. In this manner, the New Settlement falls within the universe of reasonable

#3028262 (114526.003)

actions.  In re Mailman Steam Carpet Cleaning Corp., 212 F.3d 632 (1st Cir.), *cert. denied*, 531 U.S. 960 (2000).The New Settlement sacrifices the potential outcome of litigation in exchange for provision of known tangible benefits and prompt finality under 11 U.S.C. § 704(1).  In re Bond, 16 F.3d 408 (4th Cir. 1994).  The New Settlement meets the test for approval of a settlement under Fed.R.Bankr.Pro. 9019, which requires the court to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  In re W.T. Grant Co., 699 F.2d 599, 608 (2nd Cir. 1983)(internal quote omitted).  Under this standard, a bankruptcy court is not required to know all the relevant facts in deciding whether to approval a settlement.  Weinberger v. Kendrick, 698 F.2d 61, 74 (2nd Cir. 1982)("The Supreme Court could not have intended that, in order to avoid a trial, the court must in effect conduct one.")  Instead, the Court need only note the general scope and nature of issues to otherwise be litigated and ascertain that the resolution proposed, otherwise enforceable under applicable non-bankruptcy law, is a rational one for the estate.  The New Settlement is exactly that.

17. Accordingly, Movants' motion to enforce the New Settlement should be granted.

## CONCLUSION

For the foregoing reasons it is respectfully requested that the Court grant this motion to enforce the New Settlement.

**WHEREFORE**, the Movants respectfully requests entry of an Order enforcing the

#3028262 (114526.003)

New Settlement and for such other and further relief as the Court deems just and proper.

Dated: April 18, 2008

                                       **WILENTZ, GOLDMAN & SPITZER, P.A.**
                                       90 Woodbridge Center Drive
                                       Woodbridge, New Jersey 07095-0958
                                       (732) 636-8000
                                       Attorneys for Defendants
                                       Mona Benun, Jasmine Benun,
                                       Rebecca Benun, and Sabrina Benun

                                         */s/ Deirdre Woulfe Pacheco*

                             By:_____
                                   DEIRDRE WOULFE PACHECO, ESQ.

#3028262 (114526.003)